Opinion issued June 24, 2010








 

 

 


 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 

 
 


 

 

 

 

 

 

 

In The

Court of Appeals

For The

First District of Texas

________________

 


 
NO. 01-06-00210-CR   
 


________________

 

STEVEN SANCHEZ, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 


 

 
 
 



On Appeal from the County Criminal Court at Law Number
15

Harris County, Texas

Trial Court Cause No. 1320995

 


 

 
 
 



MEMORANDUM OPINION

          A
jury convicted appellant, Steven Sanchez, of possession of a controlled
substance, and the trial court assessed punishment at 180 days in prison,
probated for 18 months, and a $750 fine. 
See Tex. Health &
Safety Code Ann. § 481.105(1) (Vernon 2003).  In six points of error, appellant challenges
(1) the legal sufficiency of the evidence to support his conviction, (2) the
factual sufficiency of the evidence to support his conviction, (3) the trial
court’s admission of testimony regarding cash found in his pockets during his
arrest, (4) the admission of testimony from police officers regarding the cash
and the general practice of selling codeine from baby bottles, (5) the trial
court’s denial of his motion for directed verdict, and (6) the trial court’s
overruling his motion for new trial.  

          In
our November 1, 2007, opinion, we sustained appellant’s challenge to the legal
sufficiency of the evidence, reversed the trial court’s judgment, and rendered
a judgment of acquittal.  See Sanchez
v. State, 264 S.W.3d 132 (Tex. App.—Houston [1st Dist.] 2007), rev’d,
275 S.W.3d 901 (Tex. Crim. App. 2009). 
On the State’s petition for discretionary review, the Texas Court of Criminal
Appeals reversed our holding that the evidence was insufficient to sustain
appellant’s conviction.  The Court of
Criminal Appeals has remanded the case for us to consider the remaining points
appellant raises on appeal.  

We affirm. 

BACKGROUND

          On
the evening of August 10, 2005, in the southwest part of Houston, Officer Hobbs
of the Houston Police Department (“HPD”) pulled over a vehicle with two
occupants.  Officer Hobbs stopped the
vehicle after randomly running the license plate and finding several City of
Houston outstanding traffic warrants related to the vehicle.  After Officer Hobbs turned on the lights and
siren of of his patrol car, the vehicle did not stop but instead slowed to
approximately 10 to 15 miles an hour but continued to drive.  The vehicle made a U-turn and passed several
driveways before finally coming to a complete stop.  After the vehicle finally came to a stop, Officer
Hobbs approached the car and asked the driver for his license or any other
identification, and proof of insurance. 
The driver was not able to provide a drivers license, photo
identification or proof of insurance. 
Officer Hobbs arrested the driver for operating a vehicle without a license,
placed the driver in the patrol car and then again approached the vehicle.  Appellant was sitting in the front passenger
seat of the vehicle while Officer Hobbs arrested the driver.  Officer Hobbs approached appellant to ask if
he had a valid drivers license so that appellant could drive the car and avoid
it being towed.  After determining that
appellant did not have a valid drivers license, Officer Hobbs asked appellant
to get out of the car so that Officer Hobbs could take an inventory of the
vehicle’s contents.  At this time,
Sergeant Macintosh-Beatson arrived on the scene and, at Officer Hobbs’ request,
placed appellant in the back seat of Macintosh-Beatson’s police car.  

While taking inventory of the
possessions in the car, Officer Hobbs found an open plastic baby bottle
containing residue of a thick, red liquid. 
The bottle was under the front passenger seat, where appellant had been
sitting.  The cap of the bottle lay
nearby on the floor.  Officer Hobbs testified
that the consistency, smell, and appearance of the substance in the bottle was
consistent with liquid codeine.  In
addition to the baby bottle, Officer Hobbs described finding “fresh red liquid
stains” on the front passenger floorboard and on the console separating the
driver and passenger.  Officer Hobbs described
the stain as “still wet, a large liquid red stain” where appellant’s feet would
have rested, and he also described other residue stains to the left of where
appellant’s feet would have been.  Officer
Hobbs believed the stains were consistent with the bottle “being poured out and
some of it being splashed on the console.”

Officer Hobbs stated that the residue
remaining in the bottle had a “mediciney smell which is also consistent with
liquid codeine.”  Officer Hobbs stated
that he believed the residue was “liquid codeine.”  Officer Hobbs placed appellant under
arrest.  During a pat-down search,
officers found “two very large . . . wads” of cash totaling $2,892.29 in
appellant’s front jean shorts pockets. 
The money included “all types of denominations”—including five-, ten-,
twenty-, fifty- and hundred-dollar bills. 
The money also included a few one-dollar bills and some coins.

          Prior
to trial, appellant’s counsel sought to exclude evidence of the money found in
appellant’s pockets on the grounds that it was irrelevant, unduly prejudicial
and that it was evidence of extraneous bad acts that violated Texas Rule of
Evidence 404b.  In a hearing before the
trial began, the court reserved ruling on the objection but instructed the
prosecutor to approach prior to introducing evidence of the money.  During Officer Hobbs’ direct examination, the
State asked for permission to introduce evidence of the money.  The trial court denied that request.  Appellant’s counsel then cross-examined
Officer Hobbs, eliciting testimony that Officer Hobbs did not see any residue
on appellant’s hands or clothes, and that appellant did not appear under the
influence of narcotics nor did his breath smell like the strong smell of the
liquid residue.  The State then
approached the bench again, asking that it be allowed to introduce evidence
about the money in order to prove that appellant was in possession of the
narcotics:

The State:   Your
Honor, we will again renew our motion to bring in the evidence about the money.

 

Defense counsel has just made argument through cross
that he wasn’t using the substance so as such he can’t possess it.  He said he didn’t have a smell on him.  There wasn’t anything sticky on his
fingers.  He didn’t look high.  There wasn’t anything on his clothing.  So now we have to come up with some
affirmative link which has always been that he wasn’t using it but he was
dealing it.  In order to prove that, the
only way to do it is through the money, Your Honor.

 

The trial court granted the State’s
motion to introduce the evidence, cautioning, “However, I don’t want there to
be any implication or argument that he was dealing.”  The court clarified that the evidence was
being admitted “as an affirmative link to the defendant.”

          After
a short voir dire examination of Officer Hobbs, appellant’s counsel made the
following objection:

Appellant’s counsel: 
Your Honor, the Court’s ruling that the State cannot try to allege that
the money found on Mr. Sanchez is from him selling drugs or anything like that
is just an affirmative link that links Sanchez to the drugs, it effectively
requires me to argue that it is not — I kind of opened the door to it for the
most part because I have to argue it is not that he possessed it, not that it
was a drug sale, just that he had the money. 
So that my record is clear, I understand the Court’s ruling but if the
money were next to the codeine or a circumstance like that, then I think they
could make an affirmative link argument. 
The money is in his pocket and the bottle is under the seat.  There is no affirmative link.  He can’t bring somebody to testify that they
saw the car stop, flag someone down who is a known codeine — narcotic
supplier.  There is no link. 

 

The court overruled the objection,
and Officer Hobbs testified on re-direct that officers found the money in
appellant’s pocket while performing a pat-down search.  Officer Hobbs described the money and, on
cross-examination, conceded that, although the area was known for drug
trafficking, the money in question was not marked in any way to indicate that
it was part of an undercover drug buying operation.  On cross-examination, the following exchange
occurred:

Appellant’s counsel:      Do you recall ever seeing Mr. Sanchez in
that area?

 

Officer Hobbs:      Not to my knowledge, no, sir.

 

Appellant’s counsel:  Mr. Sanchez was never someone that was on
your list as a possible drug dealer, was he?

 

Officer Hobbs:      No, sir, to my knowledge I have never come into contact with
him until that incident.

 

Appellant’s counsel:      You didn’t have any information that
evening that would suggest the vehicle that Mr. Sanchez was in stopped to buy
drugs from any person, did you?

 

Officer Hobbs:      No, sir.

 

Appellant’s counsel:  You are not telling the ladies and gentlemen
of the jury that Mr. Sanchez — the money doesn’t have anything to do with the
codeine on it is what I am saying?

 

Officer Hobbs:  Other than a drug scent on it, no.  I cannot say that it does.

 

. . . .

 

Appellant’s counsel:  But there was nothing that happened that
night that led you to believe Mr. Sanchez had recently bought or sold any
drugs?

 

Officer Hobbs:      No, sir, other than the fact of the narcotics present and the
amount of money present.

 

. . . .

 

Appellant’s counsel:  So you don’t know, you can’t tell the ladies
and gentlemen whether or not the bottle belonged to whomever the co-defendant
was, can you?

 

Officer Hobbs:      No, I cannot.

 

Appellant’s counsel:  It is very possible that both Mr. Sanchez and
the co-defendant possessed it, isn’t it?

 

Officer Hobbs:      It is quite possible.

 

Appellant’s counsel:  It is possible that just the co-defendant
possessed it, isn’t it?

 

Officer Hobbs:      Other than the fact that it was found on his side of the car
with the liquid on his side of the car.

 

During this cross-examination,
Officer Hobbs admitted that he did not know when the bottle had been poured
out, and that he did not know if it had been poured out prior to appellant
getting into the car.  Officer Hobbs also
testified that the liquid was a wet stain in the carpet rather than still in a
puddle on the floor of the car. 
Appellant’s fingerprints were not on the baby bottle.  Officer Hobbs did not observe any residue on
appellant’s clothes or hands and appellant did not appear to be under the
influence of a narcotic at the time of his arrest.  

Sergeant Macintosh-Beatson testified
that he stopped and helped Officer Hobbs after Officer Hobbs stopped the
vehicle in which appellant was riding. 
Sergeant Macintosh-Beatson testified that he found “a couple wads of
cash” in appellant’s front pants pocket but that he did not find any drug
paraphernalia or weapons.  Sergeant
Macintosh-Beatson confirmed that he did not see any signs on appellant that
indicated appellant had poured the residue out of or into the baby bottle.  On cross-examination, Sergeant
Macintosh-Beatson stated that he believed the money indicated that appellant
had been in possession of the codeine because “if the money is obtained during
a drug transaction, then I think that would be partly involved.”  Like Officer Hobbs, Sergeant
Macintosh-Beatson admitted that he did not observe appellant buying or selling
narcotics prior to his arrest.  

Appellant’s counsel:      So
again, how does the money become relevant as to whether or not Mr. Sanchez
possessed codeine?

 

Sergeant Macintosh-Beatson:  I think it becomes relevant when he is charged
with a crime dealing with drugs.

 

Appellant’s counsel:      Yes,
sir.  Exactly, if he is charged with
dealing drugs —

 

Sergeant Macintosh-Beatson: Dealing with drugs.

 

Appellant’s counsel:      Dealing
with drugs.  So are you testifying to the
jury that Mr. Sanchez was out there selling drugs? 

 

Sergeant Macintosh-Beatson:           In
my opinion it is very likely, yes, because of the way that codeine is
transported. . . .

. . . .

 

Appellant’s counsel:      So
the fact that he had money in his pocket allows to believe that he is a drug
dealer.  Is that correct?  Do I understand your testimony right?

 

Sergeant Macintosh-Beatson: I didn’t make that assumption, no.

 

Appellant’s counsel:      Again
then, tell the ladies and gentlemen of the jury just because he has the money
does not mean he is a drug dealer, does it?

 

Sergeant Macintosh-Beatson: No.

 

          Officer
Guerrero, a narcotics dog handler, was called to the scene to assist in the
investigation.  His dog was trained to
“alert” to heroin, crack, cocaine, codeine, methamphetamine, and marijuana,
although the “alert” did not distinguish between any of those categories of
narcotics.  Guerrero testified that his
dog gave an alert on the cash found in appellant’s pockets.  Guerrero admitted he believed that a large
percentage of currency has an odor of narcotics on it, and that he couldn’t
determine whether a person committed a crime simply because the dog alerted
that money contained an odor of narcotics.

          Officer
Abraham Vanderberry, an officer assigned to the Special Investigations Command
Narcotics Division, testified that, as an undercover officer, he purchased
narcotics and specialized in curtailing narcotics trafficking.  He testified that codeine was commonly mixed
with Promethazine in a bottle and “cut” with an over-the-counter medication
such as Nyquil.  Officer Vanderberry
testified that, although codeine syrups were often sold in baby bottles with
ounce markings on the side, possession of such a baby bottle alone “would not
be indicative of an individual that is selling.”  

Joseph Chu, an HPD Crime Laboratory
chemist, testified regarding the chemical substance found in the baby
bottle.  He testified that he believed
the substance to be cough syrup containing codeine and Promethazine, a cough
suppressant, but that he could not quantify the amount of Promethazine in the
substance. 

Appellant’s
counsel moved for a directed verdict based on Chu’s testimony that he could not
quantify the amount of Promethazine.  The
trial court overruled the motion, and the jury found appellant guilty as
charged. 

ANALYSIS

 

I.
      Sufficiency of the Evidence

Appellant was
charged by information under sections 481.105(1) and 481.118 of the Health
Safety Code.[1]  The jury was asked to determine whether it
believed, beyond a reasonable doubt, that appellant 

did intentionally or knowingly
possess a controlled substance, to-wit: any compound, mixture, or preparation
containing limited quantities of any of the following narcotic drugs that also
contain one or more non narcotic [sic] active medicinal ingredients in
sufficient proportion to confer on the compound, mixture or preparation
valuable medicinal qualities other than those possessed by the narcotic drug
alone: namely, a compound containing not more than 200 milligrams of codeine
per 100 millileters [sic] or per 100 grams, weighing by aggregate weight,
including any adulterants or dilutants, less than 28 grams.

 

In his first and
second point of error, appellant claims that the evidence regarding the
quantity of Promethazine in the mixture in the baby bottle was legally and
factually insufficient to support the guilty verdict.  Appellant also contends that the evidence
regarding the quantity of codeine in the baby bottle was factually and legally
insufficient to support the jury’s guilty verdict.

A.  
Promethazine present in “sufficient proportion”
to confer “valuable medicinal qualities” other than those possessed by codeine
alone.

 

To support the
jury’s verdict, the evidence at trial must have been sufficient for the jury to
find that the substance in the baby bottle contained both (1) “not more than
200 milligrams of codeine per 100 millileters [sic] or per 100 grams, weighing
by aggregate weight, including any adulterants or dilutants, less than 28
grams” and (2) “one or more non narcotic [sic] active medicinal ingredients in
sufficient proportion to confer on the compound, mixture or preparation
valuable medicinal qualities other than those possessed by the narcotic drug
alone.”  

Appellant first
focuses on this second prong, contending that the State has not proved that the
nonnarcotic medicinal ingredient in the mixture, Promethazine, was present in
the mixture “in a sufficient proportion to confer valuable medicinal qualities
other than those possessed by [codeine] alone.” 
The State responds that it is not required to prove the quantity of the
Promethazine present in the baby bottle, only that the Promethazine was present
“in sufficient proportion to confer . . . valuable medicinal qualities.”  

In reviewing the legal sufficiency of
the evidence to support a conviction, we view all of the evidence in the light
most favorable to the prosecution in order to determine whether any rational
trier of fact could have found the essential elements of the crime beyond a
reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789
(1979); Clayton v. State, 235 S.W.3d
772, 778 (Tex. Crim. App. 2007).  

When reviewing the factual
sufficiency of the evidence to support a conviction, we view all the evidence
in a neutral light, favoring neither party. Steadman
v. State, 280 S.W.3d 242, 246 (Tex. Crim. App. 2009); Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006).  We then ask whether the evidence supporting
the conviction, although legally sufficient, is nevertheless so weak that the
fact-finder’s determination is clearly wrong and manifestly unjust or whether
conflicting evidence so greatly outweighs the evidence supporting the conviction
that the fact-finder’s determination is manifestly unjust.  Steadman,
280 S.W.3d at 246; Watson, 204 S.W.3d
at 414-15, 417.  To reverse under the
second ground, we must determine, with some objective basis in the record, that
the great weight and preponderance of all the evidence, although legally
sufficient, contradicts the verdict.  Watson, 204 S.W.3d at 417.  Unless we conclude that it is necessary to
correct manifest injustice, we must give due deference to the fact-finder’s
determinations, “particularly those determinations concerning the weight and
credibility of the evidence.”  Johnson v. State, 23 S.W.3d 1, 9 (Tex. Crim.
App. 2000); see Steadman, 280 S.W.3d at 246. 

At trial, Officer Hobbs testified
that the contents of the baby bottle had a “mediciney” smell.  Further, Chu, the HPD chemist, offered the
following testimony at trial: 

Q (State):    Now,
based on your analysis of State’s Exhibit 2, the contents there, will you tell
the jury what it contained, sir?

 

A (Chu):     This
typical item contains two compounds.  The
first one is codeine and the second one is Promethazine.

 

. . . .

 

Q:               What
about Promethazine?

 

A:               Promethazine is typical medicine that is being
prescribed by the physicians for the typical cough in patients.

 

. . . .

                   

Q (Defense, on voir dire in
presence of the jury):   Mr. Chu, were you able to determine the
amount of Promethazine that was in the bottle?

 

A:               No, in the laboratory we don’t perform quantifications
on the Promethazine as well as codeine.

 

Q:               You are not able to determine the quantity of
Promethazine that was contained within the baby bottle.  Is that right?

 

A:               HPD has no policies and no procedure at the time to
determine the amount of Promethazine that was contained within the bottle.

 

Q:               I understand but, yes or no, you were not able to
determine the amount of Promethazine that was contained within the bottle? 

 

A:               No.

 

. . . .

 

Q (State):    Based on your training and experience and the
testing you did in the lab, did you determine whether the substance in that
bottle had a compound containing not more than 200 milligrams of codeine and
any of its salts per 100 milliliters or 100 grams? 

 

. . . .

 

A:               Usually you can see the contents in this bottle it is
a liquid.  It is like a syrup
material.  Most likely which we call
cough syrup and cough syrups contain four compounds which is sugar, glucose,
alcohols, which is ethanol, Promethazine and codeines.  Usually the cough syrups, the concentration
of codeine will last [sic] 200 milligrams per 100 mil. 

 

Q:               Now, does that mean if you can’t quantify, does that
mean you cannot tell whether or not the substance that is brought to you
contains codeine?

 

A:               It is absolutely codeine.  We can identify the compound.  However, we cannot determine the quantity. 

 

. . . .

 

Q (Defense counsel, cross): Since
you don’t have enough information to quantify how much Promethazine was in that
solution, you cannot testify to the jury and tell them whether or not the
Promethazine had a valuable medicinal quality, can you?

 

A:               Yes.  Promethazine has been identified in this
syrup.








 

Q:               And Promethazine on its own has a valuable medicinal
quality, doesn’t it?

 

A:               It
has.

 

Q:               But the question is can the amount of Promethazine
that is contained and identified in that substance carry on a valuable
medicinal quality other than that possessed by the narcotic which is
codeine?  There’s no way you can answer
that because you cannot quantify how much was in there, correct?

 

A:               No, I cannot quantify it but the compound is
identified and we know Promethazine it is a dangerous drug.  It has to be prescribed by physicians.

 

. . . .

 

          Q:               Do you know what is the purpose
of Promethazine?

                   

A:               Usually it is added for the cough syrups to ease the
(unintelligible) and anti-inflammatory.

 

          Q:               And
as a doctor when you prescribe cough syrup, the reason that you are prescribing
that either can be to suppress the cough and have respiratory functions of an
individual not be inflamed. Is that right?

 

          A:               For medical purpose?

                   

Q:               Yes, sir, medical purpose.  My question, though, sir, is you know that
that is what Promethazine is prescribed for, correct?

 

 

          A:               Yes.

 

Q:               But you do not know whether the amount, I think what
you testified to, that is contained within that bottle had a valuable medicinal
quality?

 

A:               I cannot testify for the quantity of the Promethazine
existed there. 

 

On redirect, the State elicited the
following testimony from Chu: 

Q:               Mr. Chu, you know beyond a reasonable doubt that there
was codeine in this mixture, right? 

 

A:               That’s correct. 

 

Q:               You know beyond a reasonable doubt there is
Promethazine in this mixture, right?

 

A:               That’s correct. 

 

Q:               And you know beyond a reasonable doubt that
Promethazine is used as a cough suppressant, right? 

 

A:               That’s correct. 

 

Q.               And you know beyond a reasonable doubt that there
wasn’t more than 200 milligrams of codeine in that substance, right? 

 

. . . .

 

A:               No, I haven’t seen any cough syrups more than 200
milligrams per hundred mil.

 

. . . .

 

Q:               And this entire substance, the codeine, the
Promethazine, the sugar, the water, whatever was in there was not more than 28
grams, right?

 

A:               That’s correct.

 

Appellant points
out that Chu was not able to quantify the amount of Promethazine in the baby
bottle and thus he argues that Chu was not able to state that the mixture had
valuable medicinal qualities other than those possessed by the codeine alone.  Chu’s testimony, however, described
Promethazine as a substance that “on its own has a valuable medicinal quality”
as a nonnarcotic cough-suppressant. 
Although Chu did not testify—and was never specifically asked—whether
a  particular amount of Promethazine is
required for Promethazine to be an effective medication for treatment of
particular conditions, Chu’s testimony is clear that Promethazine is a
“medicine” and that it “on its own has a valuable medicinal quality.”  The Court of Criminal Appeals, considering
this evidence, held that “a jury could rationally find that the Promethazine
(whatever its quantity in the substance) was ‘in sufficient proportion to
confer on [the substance] valuable medicinal qualities.’”[2]  Sanchez,
275 S.W.3d at 905.

Accordingly, the
evidence presented, viewed in the light most favorable to the prosecution, is
sufficient to support the jury’s verdict that the baby bottle contained enough
Promethazine to confer “valuable medicinal qualities” other than those
possessed by the codeine alone.  Thus,
the evidence was legally sufficient to support the jury’s verdict.  Clayton,
235 S.W.3d at 778; Sanchez, 275
S.W.3d at 905.  Similarly, viewing all of
the evidence in a neutral light, we hold that the evidence supporting the
jury’s conclusion that the amount of Promethazine present was sufficient to
confer “valuable medicinal qualities” is not so weak that the verdict is
clearly wrong and manifestly unjust or against the great weight and
preponderance of the evidence.  Steadman, 280 S.W.3d 242 at 246.  

B.  
A compound containing not more than 200
milligrams of codeine per 100 milliliters or 100 grams . . . weighing less than
28 grams.

 

Appellant also
argues that the evidence is legally and factually insufficient to support the
jury’s verdict that the substance in the baby bottle contained “not more than
200 milligrams of codeine, and any of its salts per 100 millileters [sic] and
per 100 grams, weighing by aggregate weight, including any adulterants and
dilutants, less than 28 grams.”  

Appellant first
attempts to cast Chu’s testimony as being unable to discern whether the bottle
contained codeine or another related compound such as codeine sulfate or
codeine phosphate.  Chu, however, clearly
testified that the baby bottle contained a substance with both “codeine” and
Promethazine in it.  Chu also testified
that the substance was, in his opinion, a cough syrup and that it “absolutely”
contained codeine.  We also note that Officer
Hobbs testified—without equivocation—that the bottle contained “liquid codeine.”  

Second, as to
the concentration of codeine in the mixture, Chu’s testimony was sufficient to
support a finding that the codeine was present in a concentration of not more
than 200 milligrams of codeine per 100 milliliters or 100 grams.  Chu testified that “[u]sually the cough
syrups, the concentration of codeine will last [sic] 200 milligrams per 100
mil,” and that he had not seen any cough syrups with a higher concentration of
codeine.  

Finally, as to
whether the substance in the bottle weighed less than 28 grams, Chu’s testimony
was that “it is so obvious it should be less than 28 grams.”  We take this testimony to mean that the
bottle contained less than 28 grams of liquid, and Chu’s testimony is thus sufficient
to support the jury’s verdict that the substance within the bottle weighed less
than 28 grams.  Chu also testified that
28 grams of syrup would be 16 ounces. 
The jury was shown the baby bottle, which had ounce markings clearly
delineated upon it, and was free to decide for itself whether it agreed with
Chu’s conclusion that the bottle was capable of containing more or less than
that 16 ounces of the compound.   

We note that the State is not required
to prove the amount of the controlled substance and the amount of adulterants
and dilutants.  Instead, the State must
prove only that the aggregate of the controlled substance, including
adulterants and dilutants, if any, equals the minimum weight for the offense
charged.  Melton v. State, 120 S.W.3d 339, 344 (Tex. Crim. App. 2003).  In Dudley v. State, the Beaumont Court of
Appeals held the evidence was both legally and factually sufficient to support
a conviction for possession of a controlled substance under Penalty Group 4.  Dudley
v. State, 58 S.W.3d 296, 300 (Tex. App.—Beaumont 2001, no pet).  In Dudley,
when the defendant was arrested, the police seized a styrofoam cup containing a
liquid that smelled like cough syrup.  Id. at 297.  Although the State’s laboratory analyst
testified that she did not determine the concentration of codeine in the
liquid, she did testify that the liquid contained both codeine and Promethazine.
 Id.
at 299.  She said, “And this is a
combination commonly found in cough syrup type preparations that contain
Codeine in a concentration of less than 200 milligrams per 100 milliliters of
syrup.”  Id.  In addition, the written
laboratory report provided identical information about the codeine
concentration.  Id.

Similarly, the
evidence presented in this case, when viewed in the light most favorable to the
verdict, is sufficient to support the jury’s verdict that the baby bottle
contained a compound that contained not more than 200 milligrams of codeine per
100 milliliters or 100 grams and that weighed less than 28 grams.  Clayton,
235 S.W.3d at 778.  Viewing all of the
evidence in a neutral light, we hold that the evidence supporting the jury’s
conclusion that the baby bottle contained a compound containing not more than
200 milligrams of codeine per 100 milliliters or 100 grams and weighing less
than 28 grams is not so weak that the verdict is clearly wrong and manifestly
unjust or against the great weight and preponderance of the evidence.  Steadman,
280 S.W.3d 242 at 246.  We overrule
appellant’s first and second points of error.

II.
     Exclusion of Evidence

In his third
point of error, appellant argues that the trial court erred by admitting
evidence of $2,892.29 found in his front pants pockets at the time of his
arrest.  In his fourth point of error,
appellant argues that the trial court erred by admitting the testimony of
Officer Hobbs, Officer Guerrero, Sergeant Macintosh-Beatson, and Officer Vanderberry.  Appellant argues that the evidence regarding
the money and the testimony of these police officers should have been excluded
because it was irrelevant and because its potential for prejudice outweighed
its probative value.  Appellant also
argues that admitting evidence of the money and the officers’ testimony
“invited the jury to convict appellant of possession because he was a drug
dealer in general.”

A.              
 $2,892.29


 

 Appellant complains that the trial court erred
by admitting evidence that  officers
found $2,892.29 in cash in his pockets at the time he was arrested.  On appeal, appellant argues that the money
was irrelevant to the question at issue—whether he possessed the codeine cough
syrup, and that the probative value of the money was outweighed by the
potential for prejudice.  Essentially,
appellant argues that the State, by informing the jury of the money in
appellant’s pocket at the time of his arrest, attempted to imply that appellant
was a drug dealer.  Appellant contends
that such an implication ran afoul of Texas Rule of Evidence 404(b), which
prohibits introduction of “other other crimes, wrongs or acts” to prove the
character of a person in order to show action in conformity therewith.  Tex. R.
Evid. 404(b).  Under the Rule,
however, such evidence may be admissible for “other purposes, such as proof of
motive, opportunity, intent, preparation, plan, knowledge, identity, or absence
of mistake or accident.”  Id.

As noted above,
the trial court heard appellant’s motion in limine and reserved its
ruling.  During Officer Hobbs’ initial
testimony on direct examination, the State did not solicit evidence regarding
the money during its direct examination of Officer Hobbs.  However, after Officer Hobbs’
cross-examination by appellant’s counsel and his testimony that appellant did
not appear to be under the influence, smell like narcotics or appear to have
any residue on his hands or clothes, the State again asked the court for
permission to introduce testimony regarding the money.  The State argued that the money was relevant
because, in the absence of evidence that appellant had ingested the narcotics,
the money was an “affirmative link” establishing appellant’s possession of the
baby bottle containing codeine.  The
trial court then ruled that the money was admissible, but cautioned, “I don’t
want there to be any implication or argument that he was dealing.”  The trial court explained that she was
admitting evidence of the money only to show “an affirmative link.”  

After Officer
Hobbs testified, the State called Sergeant Macintosh-Beatson.  Sergeant Macintosh-Beatson testified that he
assisted Officer Hobbs in arresting appellant and that he performed a pat-down
search of appellant.  Sergeant
Macintosh-Beatson did not testify on direct that he found money in appellant’s
pockets.  During cross-examination,
appellant’s counsel asked whether Sergeant Macintosh-Beatson found drug
paraphernalia in appellant’s pockets. 
Sergeant Macintosh-Beatson responded “I didn’t find any drug
paraphernalia.  He did have a couple of
wads of cash in his front pocket.” 
Appellant’s counsel later asked Sergeant Macintosh-Beatson whether
possession of money tied appellant to the codeine, and Sergeant
Macintosh-Beatson testified, “I think it does.” 
Sergeant Macintosh-Beatson admitted that the police officers did not
observe a drug transaction, and that none had been reported.  However, he explained that the transportation
of codeine in a baby bottle is a common method used by drug dealers.  

The evidence
relating to the money in appellant’s pockets was relevant to the crime with
which appellant was charged because it was an affirmative link to the
codeine.  When an accused is charged with
unlawful possession of drugs, the State must prove (1) the defendant exercised
actual care, custody, control, or management over the contraband and (2) the
accused knew the object he possessed was contraband.  Poindexter
v. State, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005).  “When the accused is not in exclusive
possession of the place where the substance is found, it cannot be concluded
that he had knowledge of and control over the contraband unless there are
additional independent facts and circumstances which affirmatively link him to
the contraband.”  Id. at 406.  Evidence that
affirmatively links an accused to the substance is proof that he possessed it
knowingly.  Brown v. State, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995).  Affirmative links may be shown by direct or
circumstantial evidence, but in either case it must establish to the requisite
level of confidence that the accused’s connection with the drug was more than
just fortuitous.  Poindexter, 153 S.W.3d at 405–06 (citing Brown, 911 S.W.2d at 747).  As
explained in Poindexter, “The
‘affirmative links rule’ is designed to protect the innocent bystander from
conviction based solely upon his fortuitous proximity to someone else’s drugs.”
 Id.
at 406. 

          The Court of Criminal Appeals has
identified several admissible factors that help to establish affirmative links
between the accused and the contraband, including whether: (1) the contraband
was conveniently accessible to the accused; (2) the contraband was found on the
side of the car where the accused was sitting; (3) the place where the
contraband was found was enclosed; (4) traces of the contraband where found;
and (4) a large sum of money was found on the accused.  Evans v. State, 202 S.W.3d 158, 162
(Tex. Crim. App. 2006); Robinson v. State, 174
S.W.3d 320, 326 (Tex. App.—Houston [1st Dist.] 2005, pet. denied); Olivarez
v. State, 171 S.W.3d 283, 291 (Tex. App.—Houston [14th Dist.] 2005, no pet.).
 The number of factors supporting the
evidence is not as important as the “‘logical force’ they collectively create
to prove that a crime has been committed.” 
Roberson v. State, 80 S.W.3d
730, 735 (Tex. App.—Houston [1st Dist.] 2002, pet. ref’d).

          This Court has previously held that a
large sum of money found in a defendant’s possession may be such an affirmative
link showing possession of contraband.  See, e.g., Classe v. State, 840 S.W.2d 10, 12 (Tex. App.—Houston [1st
Dist.] 1992, pet. ref’d) (large amount of cash on defendant was affirmative
link to possession of contraband).  The
Court of Criminal Appeals has noted the same. 
See, e.g., Evans, 202 S.W.3d at 62 n.12 (noting
that “whether the defendant was found with a large amount of cash” is
affirmative link in possession cases).

Appellant
contends, however, that the prejudicial value of this evidence and the
possibility that a juror might believe he was dealing drugs when he was charged
only with the mere possession of drugs required the trial judge to exclude the
evidence.  Under Texas Rule of Evidence 403, relevant evidence
may be excluded if its probative value is “substantially
outweighed by the danger of unfair prejudice, confusion of the issues, or
misleading the jury . . . .”  Tex. R. Evid. 403; Lamb v. State,
186 S.W.3d 136, 143 (Tex. App.—Houston [1st Dist.] 2005, no pet.).  Rule 403 requires a trial court to balance
the probative value of the evidence against its potentially prejudicial effect.  Montgomery v. State, 810 S.W.2d 372,
388–90 (Tex. Crim. App. 1990).  In
performing this balancing analysis, the trial court is given wide discretion in
determining the admissibility of evidence, and we will not disturb its ruling
on appeal absent a showing of abuse of discretion.  Id. at 145 (citing Henderson v. State, 29 S.W.3d 616, 626
(Tex. App.—Houston [1st Dist.] 2000, pet. ref’d)).

          In light of the facts of this case,
including the fact that appellant denied possession of the narcotics, the State
was required to use circumstantial evidence to show appellant’s possession of
the codeine and the money provided an affirmative link between appellant and
the codeine.  Accordingly, the probative
value of the money outweighed the possibility of prejudice to appellant.  We hold the trial court did not err when it admitted evidence
of the $2,892.29 in cash found in appellant’s pockets at the time of his
arrest.

We overrule appellant’s third point
of error.

B.  
Testimony of Officer Hobbs, Officer Guerrero, Sergeant
Macintosh-Beatson and Officer Vanderberry

 

In his fourth point
of error, appellant contends that the trial court erred by allowing the
testimony of Officer Hobbs, Officer Guerrero, Sergeant Macintosh-Beatson and Officer
Vanderberry.  On appeal, however,
appellant does not specify the portion of these officers’ testimony to which he
objects on appeal.  Instead, appellant’s
brief generally states that “the testimony of Officers Hobbs,
Macintosh-Beatson, Guerrero and Vanderberry was inadmissible evidence of
extraneous criminal conduct under rule 404(b).” 


Because appellant
fails to identify the specific statements at issue, we have no way of
ascertaining whether he preserved an objection to those statements at
trial.  Tex.
R. App. P. 33.1(a)(1)(A) (to preserve issue for appeal, appellate record
must reflect that complaint was timely made to trial court stating ruling
sought and grounds therefor with sufficient specificity to make trial court
aware of complaint); Tex. R. App. P.
 38.1(i) (appellate brief must
contain clear and concise argument for contentions made, with appropriate
citations to authorities and to record); see also Mims v. State, 238
S.W.3d 867, 874 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (where appellant
failed to specifically identify statement he claimed was hearsay, complaint on
appeal was waived).  

We overrule
appellant’s fourth point of error. 

III.
   Appellant’s Motion for Directed Verdict

In his fifth
point of error, appellant asserts that the trial court erred by denying his
motion for directed verdict.  At trial,
appellant moved for a directed verdict of acquittal based on the State’s
alleged failure to quantify the Promethazine in the substance contained in the
baby bottle and its alleged failure to prove that appellant possessed codeine
and not a related substance.  On appeal,
appellant discusses Texas Rule of Evidence 702 and the reliability of expert
testimony.  Appellant’s brief clearly
takes issue with some opinion offered by Mr. Chu, but fails to specify which of
his opinions that might be.  

We held above
that the evidence of the chemical makeup of the substance in the bottle is
legally and factually sufficient to support the verdict.  To the extent that appellant raises any other
complaint, it is waived due to inadequate briefing and a failure to cite to
specific portions of the record.  Tex. R. App. P. 38.1(i).  We overrule appellant’s fifth point of error.


IV.
   Appellant’s Motion for New Trial

In his sixth
point of error, appellant contends the trial court erred by overruling his
motion for new trial.  However, appellant
simply attaches his motion for new trial and states that he “incorporates those
arguments into his brief and re-urges the points contained within.”  A mere reference by incorporation to a motion
filed in the trial court, without a discussion of the issues raised in the
motion in the body of the brief, is not sufficient to raise complaints on
appeal.  Tex. R. App. P. 38.1(i); Sims v. Fitzpatrick, 288 S.W.3d 93, 104 (Tex. App.—Houston [1st
Dist.] 

2009, no pet.) (finding waiver where appellants
complained of trial court’s failure to grant motion for new trial but failed to
discuss merits of motion in their brief, only globally asserting that their
“motion incorporated all the points of error raised thus far in this brief.”).

Accordingly, we
overrule appellant’s sixth point of error. 
   

Conclusion

We overrule
appellant’s points of error and affirm the judgment of the trial court.                                   

 

 

                                                          George
C. Hanks, Jr.

                                                          Justice

 

Panel consists of Justices Keyes, Alcala and Hanks.

 

Do not publish.  See Tex.
R. App. P. 47.2(b)

 

 

 











[1]           As the
Court of Criminal Appeals noted, “It appears that appellant possessed a
codeine-based cough medicine or syrup without a valid prescription.”  Sanchez,
275 S.W.3d at 905 n.7.  

 

Section 481.105 provides:

 

Penalty Group 4 consists of:

 

a compound, mixture, or
preparation containing limited quantities of any of the following narcotic
drugs that includes one or more nonnarcotic active medicinal ingredients in
sufficient proportion to confer on the compound, mixture, or preparation
valuable medicinal qualities other than those possessed by the narcotic drug
alone: . . . .  

 

Tex. Health
& Safety Code Ann. §
481.105(1) 

Section 481.118 provides:

Offense: Possession of Substance in Penalty Group 4

 

(a)
Except as authorized by this chapter, a person commits an offense if the person
knowingly or intentionally possesses a controlled substance listed in Penalty
Group 4, unless the person obtained the substance directly from or under a
valid prescription or order of a practitioner acting in the course of practice.

 

(b) An offense under Subsection (a) is a Class B
misdemeanor if the amount of the controlled substance is, by aggregate weight,
including adulterants or dilutants, less than 28 grams.

 

Tex. Health &
Safety Code Ann.
§ 481.118 (a), (b) (Vernon 2003).

 





[2]           In its
opinion reversing our previous opinion, the Court of Criminal Appeals
specifically noted that  

 

Chu’s testimony did not . . . establish just the mere
presence of Promethazine.  Rather, Chu’s
testimony established the presence of Promethazine that “on its own has a
valuable medicinal quality.  Evidence
that the Promethazine in the substance “on its own has a valuable medicinal
quality” is sufficient to support a finding that it was “in sufficient
proportion to confer on the [substance] valuable medicinal qualities.”  Under these circumstances, the State was not
required to quantify the Promethazine in the substance. 

 

Sanchez, 275 S.W.3d st
905.