

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NOS. PD-1708-08 & PD-1709-08

**LEONARD MILES III, Appellant**

**v.**

**THE STATE OF TEXAS**

On Discretionary Review of
Cases 05-07-1239-CR & 05-07-1240-CR
of the Fifth Court of Appeals,
Dallas County

Womack, J., delivered the opinion of the Court, in which Meyers, Price, Johnson, Cochran, and Alcala JJ., joined. Cochran, J., filed a concurring opinion, in which Johnson and Alcala, JJ., joined. Keasler, J., concurred in the judgment. Keller, P.J., filed a dissenting opinion, in which Hervey, J., joined.

A jury convicted the appellant of unlawful possession of firearm and possession of codeine.

Our order granting review in the firearm case (our PD-1708-08, the Court of Appeals' case 05-07-1239-CR) was a clerical error, and the petition for discretionary review in that case is dismissed as improvidently granted.

The rest of our opinion will deal with the appeal of the codeine case (our PD-1709-08, the Court of Appeals' case 05-07-1240-CR), in which the appellant challenged the sufficiency of the evidence to support his conviction under Health and Safety Code Section 481.115, Possession of Substance in Penalty Group 1.

The Fifth Court of Appeals held that the evidence at the appellant's trial was sufficient to support his conviction under another section of the Health and Safety Code: Section 481.118, Possession of Substance in Penalty Group 4.[1]

We granted the appellant's petition for discretionary review on the following ground: "What codeine concentration is required to support a conviction for possession of codeine as a first-degree felony?" We hold that the Court of Appeals erred in failing to measure the sufficiency of the evidence against the elements of the offense for which the appellant was tried. We hold that the appellant was tried for possession of Penalty Group 1 codeine, and that the evidence presented at the appellant's trial was insufficient to support a conviction for that offense. We therefore reverse the Court of Appeals's decision in that case and render a judgment of acquittal.

## I. Sufficiency Standard

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."[2] The standard for appellate review under that Clause is whether

---

[1] *Miles v. State*, 05-07-1240-CR, 2008 WL 4981642, 2008 Tex. App. LEXIS 8820 (Tex. App.–Dallas Nov. 28, 2008) (not designated for publication).

[2] *In re Winship*, 397 U.S. 358, 364 (1970).

an appellate court can say that, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[3]

In Texas, the essential elements of the crime are defined by the "hypothetically correct jury charge" for the case.[4] The hypothetically correct jury charge "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, *and adequately describes the particular offense for which the defendant was tried*."[5]

II. Sufficiency Review on the Appeal

On appeal, the parties disagreed about the particular offense for which the appellant was tried. This disagreement stemmed from the failure of the indictment and jury charge to include an essential element that would distinguish among the three possession-of-codeine offenses in the Health and Safety Code.

The indictment alleged that, on or about February 10, 2005, the appellant possessed, with intent to deliver, codeine in the amount of 200 grams or more, including any adulterants or dilutants. The jury acquitted him of the offense of possession with intent to deliver, and found him guilty of the lesser offense of possession of that amount of codeine.

The appellant contends that he was convicted of the offense in Health and Safety Code Section 481.115: Possession of Substance in Penalty Group 1. Penalty Group 1 includes "codeine

---

[3] *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

[4] *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Cr. App. 1997).

[5] *Ibid*. (emphasis added).

not listed in Penalty Group 3 or 4."[6] Possession of 200 grams of such codeine was a felony of the second degree.[7]

The State contended that the appellant was tried for the offense in Section 481.118: Possession of Substance in Penalty Group 4. Penalty Group 4 codeine consists of codeine compositions with "not more than 200 milligrams of codeine per 100 milliliters or per 100 grams," along with "one or more nonnarcotic active medicinal ingredients in sufficient proportion to confer on the compound, mixture, or preparation valuable medicinal qualities other than those possessed by the narcotic drug alone."[8]

The Fifth Court of Appeals acknowledged that no penalty group was alleged in the indictment, but found no authority for the appellant's contention that "when the State fails to allege a penalty group in the indictment, the State must then prove Penalty Group 1."[9] Because the evidence showed that the appellant possessed a codeine composition with a total weight of 304 grams and a concentration of 158 milligrams of codeine per 100 milliliters, "an amount [sic] set out in either Penalty Group 3 or 4," the Court of Appeals concluded the evidence was sufficient to support the appellant's conviction "for possession of 200 grams or more but less

---

[6] TEX. HEALTH & SAFETY CODE § 481.102(3)(A) (as amended by the Act of June 19, 1993, 73rd Leg., R.S., Ch. 900, § 2.02). Subsequent amendments in 2009, of course, do not apply to this case.

[7] Id., § 481.115(d).

[8] TEX. HEALTH & SAFETY CODE § 481.105(1). The third possession of codeine offense in the Health and Safety Code is Section 481.117: Possession of Substance in Penalty Group 3. Penalty Group 3 codeine consists of codeine compositions with "not more than 1.8 grams of codeine . . . per 100 milliliters . . . , with one or more active nonnarcotic ingredients in recognized therapeutic amounts." TEX. HEALTH & SAFETY CODE § 481.104(a)(4).

[9] Miles, 2008 WL 4981642, at *1.

than 400 grams of codeine."[10] The Court of Appeals noted that "[t]o the extent appellant is attempting to argue indictment error, he has waived any error by failing to object at trial."[11]

We hold that the Court of Appeals erred in failing to identify the offense for which the appellant was tried, and in then failing to measure the sufficiency of the evidence against the essential elements of that offense. Evidence of codeine concentration of 158 milligrams per 100 milliliters does not distinguish between Penalty Groups 1 and 4, since a substance will fall into Penalty Group 1 if it has such a concentration of codeine, but has insufficient concentration of active nonnarcotic ingredients to qualify for Penalty Group 4. Moreover, *Malik* requires that the evidence be measured against the hypothetically correct jury charge, which must "adequately describe[] the particular offense for which the defendant was tried."[12] A reviewing court may not merely conclude that the evidence was sufficient to prove that *some* offense occurred. The evidence must be sufficient to prove that a *particular* offense occurred, and the particular offense must be that for which the defendant was tried.[13]

---

[10] *Id*.

[11] *Id.* The Court of Appeals appears to misinterpret the appellant's argument. Had the appellant objected to the indictment, he may have had a strong argument stemming from *Benoit v. State,* 561 S.W.2d 810, 815 (Tex. Cr. App. 1977), *overruled on other grounds by Harrison v. State*, 187 S.W.3d 429, 433 (Tex. Cr. App. 2005), which held an indictment for possession of codeine fundamentally defective for failing to allege a penalty group. But the appellant is not challenging the validity of the indictment. Rather, his position is that he was actually indicted and tried for possession of Penalty Group 1 codeine, but was convicted on evidence that was not legally sufficient to prove that offense.

[12] 953 S.W.2d, at 240.

[13] An appellate court, after finding evidence of the particular offense to be insufficient, may reform a trial court's judgment to reflect a conviction for a lesser-included offense, if such offense is supported by the evidence and was submitted to the jury or was requested by the party requesting reformation of the judgment. *See Tolbert v. State*, 306 S.W.3d 776, 782 n.12 (Tex. Cr. App. 2010); *Haynes v. State*, 273 S.W.3d 183, 184 (Tex. Cr. App. 2008). In this case, the State does not contend that possession of Penalty Group 4 codeine should be considered a lesser-included offense of possession of Penalty Group 1 codeine, and the record does not reflect that such a lesser-included offense instruction was requested or given.

### III. Determining the Particular Offense

With the failure of the indictment and jury charge to allege a specific codeine offense, we will look to the totality of the trial record to identify the particular offense for which the appellant was tried. The trial record provides clues when reviewed in conjunction with the following statutory framework of offenses and punishments related to codeine possession:

- Penalty Group 1 codeine is defined as "codeine not listed in Penalty Group 3 or 4."[14]

- Penalty Group 3 codeine is defined as "not more than 1.8 grams of codeine … per 100 milliliters …, with one or more active, nonnarcotic ingredients in recognized therapeutic amounts."[15]

- Penalty Group 4 codeine is defined as "a compound … containing limited quantities of any of the following narcotic drugs that includes one or more nonnarcotic active medicinal ingredients in sufficient proportion to confer on the compound … valuable medicinal qualities other than those possessed by the narcotic drug alone: not more than 200 milligrams of codeine per 100 milliliters or per 100 grams."[16]

- Possession with intent to deliver 200 to 400 grams of Penalty Group 1 codeine is an offense punishable by imprisonment for life or for a term of not more than 99 years or less than 10 years, and a fine not to exceed $100,000.[17]

- Possession with intent to deliver 200 to 400 grams of Penalty Group 3 or 4 codeine is a first-degree felony offense.[18]

- Possession of 200 to 400 grams of Penalty Group 1 codeine is a first-degree felony offense.[19]

---

[14] TEX. HEALTH & SAFETY CODE § 481.102(3)(A).

[15] *Id.*, at § 481.104(a)(4).

[16] *Id.*, at § 481.105(1).

[17] *Id.*, at § 481.112.

[18] *Id.*, at § 481.114.

[19] *Id.*, at § 481.115.

- Possession of 200 to 400 grams of Penalty Group 4 codeine is a second-degree felony offense.[20]

- The punishment for a first-degree felony is imprisonment for life or for any term of not more than 99 years or less than 5 years, and a fine not to exceed $10,000.[21]

- The punishment for a second-degree felony is imprisonment for any term of not more than 20 years or less than 2 years, and a fine not to exceed $10,000.[22]

- If previously convicted of a felony, a defendant newly convicted of a second-degree felony shall be punished for a first-degree felony, and a defendant newly convicted of a first-degree felony shall be punished by imprisonment for life or any term of not more than 99 years or less than 15 years, and a fine not to exceed $10,000.[23]

At the top of the indictment, after the heading "Charge," was typed the following notation: "POSS CS INT DEL 200G PG3/4/2nd." This notation suggests the State originally intended to indict the appellant under Health and Safety Code Section 481.114: Manufacture or Delivery of Substance in Penalty Group 3 or 4, which includes possession of a controlled substance with intent to deliver. In the body of the indictment, however, the grand jury presented that the appellant "did unlawfully and knowingly possess with intent to deliver a controlled substance, to-wit: CODEINE, in an amount by aggregate weight, including any adulterants or dilutants, of 200 grams or more but less than 400 grams." The body of the indictment thus did not distinguish between the penalty groups that are elements of the possession with intent to deliver offenses in Health and Safety Code Sections 481.112 and 481.114. After presenting the offense, the grand jury further presented that the appellant had been previously convicted of a

---

[20] *Id.*, at § 481.118.

[21] TEX. PEN. CODE § 12.32.

[22] *Id.*, at § 12.33.

[23] *Id.*, at § 12.42(b), (c)(1).

felony.

At the beginning of *voir dire*, the trial court read to the jury the allegations presented in the body of the indictment. The trial court then told the jury, without objection from either party, the punishments applicable to the offenses:

> Now, our law says – y'all correct me if I'm wrong now, Counsel, but a person who is convicted of this offense, if convicted, is to be confined in the penitentiary for a minimum of ten years, maximum 99 years or life imprisonment and a fine can be added up to $10,000. So in the firearms case, if there's a conviction, the punishment would be two years up to ten years; in the codeine case, it would be ten years up to 99 years or life.

This confinement range of 10 to 99 years was consistent with possession with intent to deliver Penalty Group 1 codeine, but the maximum fine of $10,000 (rather than $100,000) was consistent with possession with intent to deliver Penalty Group 4 codeine.

The State questioned the jury during *voir dire* about the principles of aggregate weight, adulterants, and dilutants, but never about the concentrations and qualitative elements required to prove the penalty group of a codeine offense. During *voir dire* the State also informed the jury of the punishment range for the offense and the effect of a prior felony:

> On the possession with intent to deliver case, the range of punishment is ten years all the way up to life, okay? . . . Now, the question you're asking about what happens if we prove a prior conviction? All that does is it bumps the minimum up to 15, 15 to life if we show one prior conviction. Okay?

This statement was consistent only with the offense of possession with intent to deliver Penalty Group 1 codeine, because the punishment range for possession with intent to deliver Penalty Group 4 codeine would have been 5 to 99 years, enhanced by the prior felony to 15 to 99 years.

During the guilt phase of trial, the State called Monica Lopez, the supervisor of the drug laboratory that tested the substances possessed by the appellant. Lopez testified about the

identity, quantity, and concentration of substances in the six jars comprising State's Exhibit 44:

[LOPEZ]: Exhibit 1-A-1, the content of one of six glass jars was used for analysis. The purple liquid contained codeine and promethazine. The amount of codeine found was 64 milligrams, which was at a concentration of 157 milligrams per 100 milliliters. The total weight of the liquid, including adulterants and dilutants, was 52 grams. The total volume of the liquid, including adulterants and dilutants, was 41 milliliters. Exhibit 1-A-2 through 1-A-6: The content of five of the six glass jars was used for analysis. The purple liquid contained codeine and promethazine. The amount of codeine found was 0.31 grams. The concentration was 158 milligrams per hundred milliliters. The total weight of the liquid, including adulterants and dilutants, was 252 grams. The total volume of the liquid, including adulterants and dilutants, was 197 milliliters. The aggregate weight or the weight of both of these exhibits was 304 grams. And the total volume of the liquid in both of these exhibits was 238 milliliters.

[STATE]: Now, reading that, you talked about two substances, codeine and promethazine. Can you explain to the jury what codeine is?

[LOPEZ]: Codeine is a narcotic analgesic. It's most often used for pain.

[STATE]: Is it a depressant?

[LOPEZ]: Yes, it's a central nervous system depressant, which means it just slows down the activities of the brain. It may cause drowsiness, sleepiness.

[STATE]: And is codeine a controlled substance?

[LOPEZ]: Yes, it is.

[STATE]: What about promethazine? What is that?

[LOPEZ]: Promethazine is most often found with codeine. Promethazine is an antihistamine. It's used as a sedative.

[STATE]: So if you were to go see the doctor and you got prescribed codeine and promethazine, there's a pain element in there as far as a reduction of pain and also an antihistamine working together; is that correct?

[LOPEZ]: That's correct.

[STATE]: Now, in your expert opinion of State's 44 and using State's 50, which is the lab report and the codeine, how – what was the aggregate weight of the

codeine found in State's 44?

[LOPEZ]: The total weight of the liquid, including adulterants and dilutants, was 304 grams.

Neither Lopez's testimony nor State's Exhibit 50, the written lab report,[24] expressly stated or implied whether the promethazine found in these particular substances was or was not "in sufficient proportion to confer on the compound, mixture, or preparation valuable medicinal qualities other than those possessed by the narcotic drug alone."[25] The evidence thus failed to address the qualitative characteristics distinguishing Penalty Groups 1 and 4.

The trial court's written charge to the jury at the conclusion of the guilt phase recited the allegations presented in the body of the indictment: "The Defendant, Leonard Miles III, stands charged by indictment with the offense of possession with intent to deliver a controlled substance, to-wit: Codeine, in an amount by aggregate weight including any adulterants or dilutants of 200 grams or more but less than 400 grams." The charge instructed the jury that if it acquitted the appellant of the offense of possession with intent to deliver, it should consider next whether the appellant was guilty of the lesser-included offense of simple possession. The charge defined the lesser-included offense as "unlawfully and knowingly possess[ing] a controlled substance, to wit: CODEINE, in an amount by aggregate weight, including any adulterants or dilutants of 200 grams or more but less than 400 grams." The jury ultimately found the appellant guilty of the lesser-included offense of possession, but as with the indictment, the guilt phase jury charge did not include allegations that distinguished between penalty groups.

---

[24] The only mention of promethazine in the written lab report was the following statement: "The purple liquid contained codeine and promethazine."

[25] TEX. HEALTH & SAFETY CODE §481.105(1) (defining Penalty Group 4).

During closing argument at the punishment phase, the State argued that the appellant was "looking at 15 to life." This statement was consistent only with simple possession of Penalty Group 1 codeine, because the punishment range for possession of Penalty Group 4 codeine, enhanced by the prior felony, would have been 5 to 99 years. At the conclusion of the punishment phase, the trial court confirmed that neither the State nor defense counsel had any objections to its proposed punishment charge. The punishment charge required the jury to set the appellant's punishment at imprisonment "for a term of not more than ninety-nine (99) years or life, nor less than fifteen (15) years, and a fine up to $10,000 (ten thousand dollars)."[26] The charge was therefore consistent only with possession of Penalty Group 1 codeine. The jury ultimately assessed punishment at imprisonment for 21 years and a fine of $500.

At the conclusion of the trial, the trial court entered a Judgment of Conviction by Jury. Under the heading "Offense for which Defendant Convicted," the judgment read "UNLAWFUL POSSESSION A CONTROLLED SUBSTANCE TO WIT: CODEINE 200G PG 3/4 2nd." Under "Statute for Offense," the judgment read "481.114 Health and Safety Code." Under "Degree of Offense," the judgment read "1ST DEGREE FELONY." These notations are internally inconsistent, as simple possession of Penalty Group 3 or 4 codeine would be separate second-degree felonies, and Health and Safety Code Section 481.114 contains possession with intent to deliver rather than simple possession.

We conclude from the foregoing evidence that the appellant was tried by the jury for the offense of possession of Penalty Group 1 codeine. The indictment and jury charge failed to include the following essential elements of the offenses in Health and Safety Code Sections

---

[26] The trial court's oral charge to the jury closely followed its written charge.

481.115 and 481.118: the negation of Penalty Groups 3 and 4,[27] and the qualitative elements of Penalty Group 4, respectively. But, we have characterized the qualitative elements of a Penalty Group 4 offense as a mitigating factor,[28] or an exception,[29] to the offense of possession of Penalty Group 1 codeine. The qualitative elements of Penalty Group 4 essentially describe codeine cough syrup, and we have noted that the design of the statute effectuates the legislature's intent to penalize possession of codeine cough syrup less severely than possession of codeine alone.[30] The elements alleged in the indictment and jury charge in this case describe a comprehensive set of codeine compositions that more closely aligns with the general subset of codeine compositions classified in Penalty Group 1 rather than the quite specific mitigating factor or exception classified in Penalty Group 4. In other words, the facts that the jury was asked to find to satisfy the elements alleged were more like the facts that would support a Penalty Group 1 general offense than the facts that would support a Penalty Group 4 exception.

The State would have us rely on the abbreviation "PG 3/4" in the heading of the indictment, the trial court's docket sheet, and the judgment to find that the appellant was tried under Section 481.118.[31] However, the abbreviation "PG 3/4" is consistent only with Section

---

[27] *See Sanchez v. State*, 275 S.W.3d 901, 906 (Tex. Cr. App. 2009) (Keller, P.J., concurring) (negating status of belonging in Penalty Group 3 or 4 is an express element of a Penalty Group 1 codeine offense).

[28] *Id.*

[29] *Id.*, at 907 (Johnson, J., concurring).

[30] *Id.*, at 905 (Keller, P.J., concurring).

[31] The State argues that our opinion in *Kirkpatrick v. State*, 279 S.W.3d 324 (Tex. Cr. App. 2009), supports the proposition that information in the heading of the indictment may be used to establish the specific offense with which a defendant is charged. While this proposition is true as far as it goes, we find *Kirkpatrick* of little assistance in the present case. In *Kirkpatrick*, the question was whether the indictment invested the district court with the necessary subject-matter jurisdiction to proceed to try the case. *Id.*, at 329. In the present case, the question is the particular offense for which the appellant was actually tried before the jury. We therefore use evidence from the

481.114, which includes possession with intent to deliver a substance in either Penalty Group 3 or 4. The abbreviation is not consistent with Section 481.118, which involves possession of a substance in only Penalty Group 4. In addition, this abbreviation was not before the jury, and it does not affect the facts, or lack thereof, that were actually alleged and tried to the jury. Furthermore, nearly all statements with respect to punishment range made by the trial court and the State were consistent with Penalty Group 1 rather than Penalty Group 3 or 4 offenses, and the jury was ultimately required to assess punishment within the higher punishment range for a Penalty Group 1 offense.

## IV. Application[32]

The hypothetically correct jury charge in this case required the State to prove the essential element of Penalty Group 1 that the codeine was "not listed in Penalty Group 3 or 4."[33] To prove this element, the State could show that (1) the concentration of the codeine was more than 1.8 grams of codeine per 100 milliliters, or (2) the codeine was not combined with active nonnarcotic ingredients in recognized therapeutic amounts or in sufficient proportion to confer on the

---

entire record, including the indictment and its headings, to help us determine the particular offense for which the appellant was tried.

[32] Ordinarily, if a Court of Appeals uses an improper standard for reviewing the sufficiency of the evidence, we remand to that court to apply the proper standard. *See Malik*, 953 S.W.2d, at 240 (remanding the cause to the Court of Appeals "to apply the correct standard of review in analyzing appellant's points of error regarding the sufficiency of the evidence"). Under the circumstances of this case, however, the Fifth Court of Appeals would cause a separate due process violation if it found the evidence to be sufficient on remand, because such a finding would necessarily rely upon factual grounds not submitted to the jury–specifically, the negation of Penalty Groups 3 and 4. *See Malik*, 953 S.W.2d, at 238 n.3 ("[D]ue process prevents an appellate court from affirming a conviction based upon legal and factual grounds that were not submitted to the jury."); *Wooley v. State*, 273 S.W.3d 260, 268 n.13 ("This due process rule is not, and should not be confused with, an evidentiary sufficiency rule."). Since reversal of the conviction would be the only constitutionally acceptable result, we will therefore simply complete the sufficiency review ourselves.

[33] TEX. HEALTH & SAFETY CODE § 481.102(3)(A).

compound valuable medicinal qualities other than those possessed by the codeine alone.[34]

The evidence at trial showed only the mere presence of promethazine. Lopez's testimony contained no implications supporting a finding with respect to the therapeutic or medicinal qualities, or lack thereof, of the amount or concentration of promethazine in the particular substances seized and tested in this case. Lopez testified only that promethazine "is most often found with codeine. Promethazine is an antihistamine. It's used as a sedative." She also agreed with the State's assertion that "if you were to go see the doctor and you got prescribed codeine and promethazine, there's a pain element in there as far as a reduction of pain and also an antihistamine working together."

The evidence presented in *Sanchez* provides helpful contrast to show the type of evidence one might expect to prove or exclude Penalty Group 3 or 4. In *Sanchez*, there was no question that the appellant was tried for possession of Penalty Group 4 codeine. The State elicited testimony demonstrating the qualitative properties of Penalty Group 4 codeine by asking a witness whether "Promethazine on its own has a *valuable medicinal quality*."[35] We found the resulting testimony to be legally sufficient because the testimony "established the presence of Promethazine that 'on its own has a valuable medicinal quality,'" which supported a finding that the promethazine was "in sufficient proportion to confer on the substance valuable medicinal

---

[34] *Id.*, at §§ 481.104(a)(4), 481.105(1). Technically, the State could also prove Penalty Group 1 if the concentration of codeine was between 1,800 and 200mg/100mL, and the codeine was combined with active nonnarcotic ingredients in sufficient proportion to confer on the compound valuable medicinal qualities other than those possessed by the codeine alone, but such active nonnarcotic ingredients were not in recognized therapeutic amounts.

[35] *Sanchez*, 275 S.W.3d, at 903 (emphasis added).

qualities."[36]

From the evidence presented in the present case, a rational juror could not infer whether the promethazine was or was not in recognized therapeutic amounts or in sufficient proportion to confer on the compound valuable medicinal qualities other than those possessed by the codeine alone. Because there was insufficient evidence as to an essential element of the particular offense for which the appellant was tried, we find the appellant's conviction to violate due process. We therefore reverse the decision of the Court of Appeals in Case 05-07-1240-CR and render a judgment of acquittal.[37]

Delivered: December 7, 2011.
Publish.

---

[36] *Id.*, at 905.

[37] In PD-1708-08 (the Court of Appeals' case 05-07-1239-CR) the petition for discretionary review is dismissed as improvidently granted.