

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

## NO. PD-1889-11

---

**DAVID LEN MOULTON, Appellant**

**v.**

**THE STATE OF TEXAS**

---

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SIXTH COURT OF APPEALS
### CASS  COUNTY

---

**ALCALA, J., filed a dissenting opinion in which PRICE and JOHNSON, J.J., joined.**

### DISSENTING OPINION

The court of appeals reversed the conviction of David Len Moulton, appellant, who

was convicted of killing his wife, Rebecca Moulton, who was found dead in a pond on their

property. *Moulton v. State*, 360 S.W.3d 540, 543 (Tex. App.—Texarkana 2011). The majority

opinion reverses the court of appeals by finding no error in the jury charge.  I respectfully

dissent for two reasons.  First, because the court of appeals has not had the opportunity to

consider this case in light of this Court's opinion on rehearing in *Sanchez v. State*, we should

remand this case to afford the court that opportunity. *See Sanchez v. State*, 376 S.W.3d 767 (Tex. Crim. App. 2012).  Second, I disagree with the majority opinion's holding on the merits that the trial court properly instructed the jury to convict if the evidence proved "asphyxiation by means unknown to the grand jury." I find that this instruction is erroneous in its reference to the grand jury, but conclude that the error is harmless.

### I.  This Court Should Remand the Case to the Court of Appeals

The court of appeals analyzed this case under this Court's original opinion in *Sanchez*, but, since then, we have withdrawn that opinion and issued a materially different opinion on rehearing. *Compare Sanchez v. State*, No. PD-0961-07, 2010  Tex. Crim. App. LEXIS 1242 (Tex. Crim. App. Oct. 6, 2010) (orig. op.), *with* 376 S.W.3d 767 (Tex. Crim. App. 2012) (op. on reh'g).  The original opinion focused on whether the manner and means were unknown or unknowable, but the opinion on rehearing abandoned that distinction and focused on the hypothetically correct jury charge based on the evidence actually introduced at trial. *See Sanchez*, 376 S.W.3d at 772-73; *see also Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997).  In the *Sanchez* opinion on rehearing, we expressly overruled the *Hicks* rule, which had required evidence regarding what the grand jury knew at the time it issued the indictment when the indictment alleged that the manner and means of inflicting the injury was unknown. *See Sanchez*, 376 S.W.3d at 771-72 (overruling *Hicks v. State*, 860 S.W.2d 419 (Tex. Crim. App. 1993)). We held that, because the evidence in that case supported "only a limited list of known alternatives for the manner and means of the cause of death," the jury

charge erroneously permitted the jury to convict Sanchez by referring to an unknown manner and means. *Id*. at 774. The court of appeals tailored its analysis to our original opinion in *Sanchez* and did not have the benefit of our opinion on rehearing in that case. *Moulton*, 360 S.W.3d at 555-63.

The materiality of the original *Sanchez* opinion to the court of appeals's analysis in this case is evident in that three of the four grounds that we granted in appellant's petition for discretionary review refer to it expressly by name.[1] It is ironic that this Court's majority opinion reverses the court of appeals for its misapplication of *Sanchez* when the court of appeals has never actually applied our *Sanchez* opinion on rehearing. Although the majority opinion suggests that we must resolve the merits of this case in the interest of judicial economy, this undermines our role as a court of last resort because we are not reviewing the decision of the lower court, but rather are making an end run around it. I, therefore, dissent from this Court's decision to address the merits of this appeal rather than remanding the case

---

[1]    Three of the four issues in appellant's petition for discretionary review state,

(1) Did appellant's objection to all three manners and means on the basis that cause of death was not established preserve a complaint about the submission of the unknown means of asphyxiation on grounds consistent with *Sanchez*?

(2) Is an appellant barred from complaining about alleged *Sanchez* error that results from his strategic decision?

(3) Does the reasoning of *Sanchez* apply outside the narrow confines of that case . . .?

The fourth issue challenges the court of appeals's harm analysis.

to the court of appeals.

## II.  The Jury Instructions Were Erroneous, But the Error Was Harmless

Because the majority opinion addresses the merits of the case, I must also address the merits to explain why I conclude that it errs in holding this jury instruction proper.  I would find the jury instructions erroneous but harmless.

### A.  Error Analysis

The majority opinion concludes that the manner and means are unknown because the crime scene does not point to a conclusive list of possibilities.[2]  It states, "The means unknown theory is supported by the fact that the victim's injuries did not conclusively point to a manner and means of asphyxiation; rather her injuries could have pointed to a variety of possibilities."  The majority opinion then attempts to distinguish *Sanchez* by asserting that, in *Sanchez*, there was a known list of alternatives, unlike the unknown alternatives here.  *See Sanchez*, 376 S.W.3d at 774.  This determination not only mischaracterizes the evidence in the record, but it also misunderstands the holding in *Sanchez*.[3]

---

[2]  The majority opinion states, "[I]n this case, there is unlimited information that may be unknown, because the crime scene does not point to a conclusive list of possibilities."  However, a reviewing court should examine all the evidence and not just the crime scene, which may or may not be relevant to the question of whether the manner and means are unknown. *See Sanchez v. State*, 376 S.W.3d 767, 774 (Tex. Crim. App. 2012).

[3]  I agree with the Honorable Judge Cochran's concurring opinion that, historically, this area of the law was overly formalistic, but I believe that we have made great strides toward clarifying this area.  For example, we no longer have the *Hicks* rule, which had required the State to prove what was known to the grand jury when it indicted a defendant. *See Hicks v. State*, 860 S.W.2d 419 (Tex. Crim. App. 1993).  We now require only that the jury instructions conform to the evidence adduced at trial. *See Sanchez v. State*, 376 S.W.3d 767, 774 (Tex. Crim. App. 2012).  If the medical examiner gives a finite list of possible manner and means of death, then the manner and means is not

All three of the paragraphs in the charge alleging the manner and means of death permitted the jury to convict appellant if the evidence proved that he (1) knowingly or intentionally caused the death of the complainant and (2) caused the complainant's death by asphyxiation. Two of the three paragraphs specifically referred to asphyxiation, one by stating, "by asphyxiation" by manual strangulation, and one by stating, "by asphyxiation by means unknown to the grand jury." The third paragraph, which stated that appellant caused the death "by drowning [the complainant] in a pond[,]" also effectively required the jury to find that he caused the death by asphyxiation because the evidence at trial conclusively established that drowning is a form of asphyxiation. Thus, to convict appellant under any of the theories submitted, the jury had to unanimously find that he knowingly or intentionally caused the complainant's death by asphyxiation. The only remaining question is whether the jury charge was erroneous because one of the three paragraphs more particularly alleged that

---

unknown; it is known to be within the finite list. In this case, Dr. McClain's testimony describing her supplemental autopsy report gave a finite list of the ways in which the asphyxia could have occurred. By contrast, if the medical examiner testifies that the manner or means of death is unknown and cannot be limited to a finite list of possibilities, then the court should instruct the jury accordingly. Here, Dr. Bux testified that the manner and means of death was entirely unknown, and the original autopsy report contained similar conclusions. Either his testimony or the original autopsy report would have provided the minimal evidence necessary to support the reference to the "unknown" allegation. Therefore, the jury instructions properly alleged "unknown." The present law for jury instructions is not overly complicated, and, in fact, we have determined that, with respect to the elements of an offense, it is ministerial in nature. *See In re State ex rel. Weeks*, __ S.W.3d __, No. AP-76,953, 2013 Tex. Crim. App. LEXIS 155, *13 (Tex. Crim. App. Jan. 16, 2013) (not yet reported). All that is required of a trial court is to listen to the evidence and, if any evidence supports the instruction, regardless of whether it is slight or its credibility questionable, give the instruction that conforms to the evidence. *See id.*

the asphyxiation was "by means unknown to the grand jury."[4]

At trial, two medical experts testified, one for the State and one for the defense. The State's expert, Dr. McClain, performed the autopsy and prepared an original and amended report. In her original report, which she prepared the day after the complainant died, she characterized the cause and manner of death as "undetermined,"[5] but noted that it was "suspicious for homicide." She also added that "should additional information become available, the cause and manner of death may be amended." In her amended report, which she prepared after there were additional investigative findings "pertaining to domestic abuse," she changed (1) the cause of death to "homicidal violence," which she said meant that "the actions of another person had caused the death of this individual," and (2) the manner of death to "homicide."

At trial, she explained that "the mechanism of death" was "asphyxia." With respect to the type of asphyxia, Dr. McClain stated,

> [T]he mechanism of death is some sort of asphyxia. Could be drowning, could be strangulation, could be suffocation. We can't specifically pick which one[]

---

[4]     The majority opinion mistakenly indicates that the indictment and jury charge alleged unknown manner and means. The majority opinion states, "Therefore, the indictment correctly alleged an unknown manner and means as well as all options supported by the evidence. Also, because manner and means remained unknown at the conclusion of the evidence, the instruction on unknown manner and means was properly submitted to the jury." The language of the indictment, which the jury charge tracked, stated, "asphyxiation by means unknown to the jury." The only "unknown" allegation was the "means" of death. Nothing in the indictment or jury charge alleged that the manner of death was "unknown."

[5]     Dr. McClain testified that the "cause of death is why someone has died, lung cancer, gunshot wound to the head, and then manner of death, there are various manners of death. There are naturals, there are accidents, suicide, homicide, and the undetermined."

because when you deal with an asphyxial type of death, the findings are very subtle. Could be drowning, could be strangulation, could be suffocation.

Dr. McClain limited the universe of the forms of asphyxia that could have occurred in this case to only four possibilities when she testified,

Asphyxia you're not going to find much, so I think that's the mechanism. I can't tell you [1] if it was strangulation, [2] if it was suffocation, [3] if it was drowning, or [4] a combination of all three.

Because she testified to four possible forms of asphyxia that could have occurred in this case, Dr. McClain's testimony could not have supported the jury instruction as to "asphyxiation by an unknown means." Inclusion of a manner and means unsupported by the evidence was precisely why we found the jury charge erroneous in our opinion on rehearing in *Sanchez*. *See Sanchez*, 376 S.W.3d at 774.[6]

But, unlike *Sanchez*, in which only one medical examiner testified about his consistent findings regarding the cause of death, two examiners testified in this case, Dr. McClain and the defense's witness, Dr. Bux, and each of them, at some point in time, determined that the manner and means of death were unknown. Dr. Bux testified that he agreed with the original autopsy report's conclusion that the manner of death was undetermined, explaining that he

---

[6]     In *Sanchez*, we quoted the State's expert who testified that the cause of death in that case was asphyxia, which was defined as a lack of oxygen to the brain. *See Sanchez v. State*, 376 S.W.3d 767, 774 (Tex. Crim. App. 2012) (op. on reh'g). We also explained that what could not be more precisely determined was whether the asphyxia was caused by strangulation, a stun gun, or a combination of the two, but that these comprised "a limited list of known alternatives for the manner and means of the cause of death." *Id*. The limited list of known alternatives, therefore, rendered the manner and means known.

could not even determine whether it was a homicide.[7] He disagreed with the amended autopsy report that changed the classification of death from undetermined to homicidal violence. More specifically, with respect to the medical findings, Dr. Bux disputed that any medical findings supported the mechanism of death. He testified that he could not conclude that the complainant was "manually strangled," was "drowned in a pond," or died "by asphyxiation by an unknown means." Dr. Bux's testimony and the findings in the original autopsy report each constitute some evidence that the complainant died "by asphyxiation by means unknown." The jury instruction, therefore, properly included this allegation.

The jury instruction, however, permitted the jury to convict appellant if it determined that the complainant died "by asphyxiation by means unknown to the grand jury." Although the evidence supported the allegation, "by asphyxiation by means unknown," there is no evidence as to what the grand jury knew regarding that allegation. Therefore, the four words in the jury instruction, "to the grand jury," were erroneous.[8]

---

[7]     When specifically asked, "Do you think it's plausible that it was a homicide?" he answered, "I wouldn't go there, no."

[8]     The Honorable Presiding Judge Keller's concurring opinion observes that the "jury charge need not ever specify the (non-statutory) manner and means by which a murder is committed or even that the manner and means is unknown." I think this statement is too broad because this Court has held that, in some circumstances, the State may have to prove facts that it has alleged in an indictment, even those that have elevated its burden of proof beyond what was statutorily required. *See Miles v. State*, 357 S.W.3d 629, 644 (Tex. Crim. App. 2011) (requiring State to prove manner and means alleged despite that exceeded statutory manner and means). Here, although this case does not concern a challenge to the adequacy of the indictment, I note that the State pleaded more than was necessary because it needed only to have alleged that appellant caused the death of the complainant (the manner of her death was homicide and not an accident, suicide, or an undetermined death) by asphyxiating her (the means of her death or why she died, such as cancer or a gunshot wound). Whether he asphyxiated her by drowning, strangling, or by any other means is immaterial

As we observed in *Sanchez*, what was known to the grand jury is not the appropriate question in deciding what the jury instructions should be. *See id*. at 772. Rather, the appropriate question is whether some evidence in the record supports the jury instruction. *See id.* at 773. Here, there is some evidence—Dr. Bux's testimony and the findings in the original autopsy report—that the asphyxiation was caused by manner and means unknown; therefore, the trial court properly included that instruction, but it erred by referring to the grand jury. *See id*.

## B. Harm Analysis

In our *Sanchez* opinion on rehearing, we determined that the error was harmless in light of the totality of the evidence. *Id.* at 774-75. The error in *Sanchez* was considerably more material to the outcome than the error in this case because two of the four paragraphs permitted convictions based on an alternative manner and means not supported by the evidence. Those allegations referred to "manner and means to the Grand Jurors unknown," and the evidence undisputedly limited the manner and means to a list of known possibilities. *Id.* at 774. Here, by contrast, because Dr. Bux testified, and the original autopsy report showed, that the cause of asphyxia was unknown, the only error in the jury instruction was the minimal reference to the grand jury.

As we expressly stated in *Sanchez* on rehearing, "Neither the manner (the *actus reus*)

---

to what had to be alleged in the indictment and jury instructions. In this case, unlike evidence-sufficiency review, we are reviewing the jury charge that was actually given and not the one that should have been given. *See Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). And the one that was given erroneously included a reference to the grand jury.

nor the means (the "instrument of death") need to be agreed upon unanimously by a jury." *Id.* at 773. We clearly stated that the "jury need only unanimously agree that [a defendant] caused the death of the complainant." *Id*. at 774. Because each of the paragraphs permitting the jury to convict appellant required it to find, beyond a reasonable doubt, that he caused the death of the complainant by asphyxiation, the jury unanimously determined how the complainant died, homicide, and the cause of her death, asphyxia. In light of this unanimous verdict, I cannot conceive of how the four words in the charge referencing the grand jury could have harmed appellant when his own expert testified that the manner and means of death were unknown.

### III.  Conclusion

I would reverse and remand to allow the court of appeals to consider our opinion on rehearing in *Sanchez*. *See id*. at 767. Alternatively, I would reverse the judgment of the court of appeals and render a judgment affirming appellant's conviction.


Alcala, J.

Filed:  March 6, 2013

Publish