

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0309-20

### DARREN LAMONT BIGGERS, Appellant

### v.

### THE STATE OF TEXAS

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SEVENTH COURT OF APPEALS
### COOKE COUNTY

SLAUGHTER, J., filed a dissenting opinion in which KELLER, P.J., YEARY, and KEEL, JJ., joined.

### DISSENTING OPINION

We granted review in this case primarily to address the question of what remedy applies when the evidence is insufficient to support conviction for possession of a penalty group 4 substance (codeine) but would be sufficient to establish a greater offense, possession of penalty group 1 codeine. The court of appeals concluded that the evidence

was insufficient to support penalty group 4 codeine possession because the chemist's testimony failed to establish that the mixture in question contained enough promethazine to confer valuable medicinal qualities outside of the codeine itself.[1] Now, this Court summarily upholds the court of appeals' conclusion as to this sufficiency question and largely focuses on whether a defendant is entitled to acquittal under these circumstances. But, as discussed below, the Court's conclusion that the evidence was in fact insufficient runs contrary to our precedent in *Sanchez v. State,* 275 S.W.3d 901 (Tex. Crim. App. 2009). Moreover, we have never required a chemist to explicitly recite the relevant statutory language or use magic words to support finding that the "valuable medicinal quality" element was satisfied. Instead, we are bound to defer to the jury's drawing of reasonable inferences from the testimony as long as its verdict is not irrational or speculative. Based on the chemist's testimony in this case, I would hold that the evidence was sufficient to support Appellant's conviction for possession of Penalty Group 4 codeine, and his conviction should be upheld under that theory. It is thus unnecessary to grapple with the question of what remedy would apply for evidentiary insufficiency under these circumstances.

---

[1] *See Biggers v. State,* 601 S.W.3d 369, 377-78 (Tex. App.—Amarillo 2020); TEX. HEALTH & SAFETY CODE § 481.105(1) (Penalty Group 4 consists of "a compound, mixture, or preparation containing limited quantities of any of the following narcotic drugs [including codeine] that includes one or more nonnarcotic active medicinal ingredients in sufficient proportion to confer on the compound, mixture, or preparation valuable medicinal qualities other than those possessed by the narcotic drug alone[.]").

The relevant trial evidence regarding whether the promethazine conferred valuable medicinal qualities was the testimony of Mallory Jenkins, a forensic chemist with the Texas Department of Public Safety ("DPS") Crime Laboratory. Jenkins generally testified that the substance smelled like cough syrup and tested positive for codeine and promethazine. She identified promethazine as "an antihistamine" but acknowledged that she was not a medical doctor. When asked whether it was "common" to see promethazine combined with codeine in cough syrup, Jenkins testified that DPS chemists "usually" see promethazine and codeine "paired together" in cough syrup. As for the substance possessed by Appellant, she stated that promethazine was "prevalent" in this mixture, noting that "both the codeine and promethazine peaks are almost even," with the promethazine being only "slightly lower" than the codeine. She did not, however quantify the exact amounts of each substance because it is not her typical practice to do so when analyzing a codeine mixture. The following relevant exchange occurred at trial:

Q:     Does promethazine, it can have a medicinal quality like we spoke about, it's an antihistamine, correct?

A:     It's listed as an antihistamine in most literature, yes.

Q:     Okay. And there's—so it's not like there's sugar or food coloring or something that's mixed in with this mixture, correct?

A:     The promethazine?

Q:     Right?

A:     Correct, it is not.

Q:     It does something, that's what I mean. Okay. And again, is that— that's a mixture that you see, typically, in those type of pharmaceutical grade packaging and things for—does promethazine come in those

things as well?

A:   Yes. We see promethazine and codeine quite often in syrups that smell sort of like a cough syrup.

Q:   Okay. So does that promethazine that's in there, first, that is a nonnarcotic, correct?

A:   Correct, it is not narcotic.

Q:   But it is an active medicinal ingredient . . . correct?

A:   Correct.

Q:   And it is prevalent in this substance?

A:   Yes.

. . .

Q:   Does the promethazine add something to this mixture medicinally, from your point of view? Is there enough there for that antihistamine to have some effect?

A:   It appears to, but I can't say for sure.

Q:   Okay. That's fine. And typically, again, when we've talked about cough syrups and those sort of things, you see that [the promethazine] in there and it's obviously there for a reason, correct?

A:   I can assume that.

On cross-examination, defense counsel focused on the fact that Jenkins had not quantified the amount of codeine or promethazine in the mixture. Counsel also focused on the fact that Jenkins was not a medical doctor who could write prescriptions, nor was she a pharmacologist. When asked by defense counsel whether her training or degree in forensic biochemistry would allow her to "say that there was a medicinal quantity of promethazine in that mixture," she replied, "No, I cannot." At another point, defense counsel asked, "You have no training and no expertise that would allow you to say that there was enough promethazine in this mixture to impart a valuable medicinal quality to

it?" she responded, "Correct, all that I know that [sic] it is an antihistamine."

In holding the evidence insufficient to support Appellant's conviction, the court of appeals reasoned that Jenkins' testimony failed to expressly state that the promethazine was in a sufficient proportion to confer valuable medicinal qualities other than those possessed by the codeine alone, such that the jury could not rationally have reached that conclusion without engaging in impermissible speculation. *Biggers v. State,* 601 S.W.3d 369, 377 (Tex. App.—Amarillo 2020). The court rejected the State's contention that this case was analogous to *Sanchez v. State*, 275 S.W.3d 901, in which we upheld a conviction for possession of penalty group 4 codeine over a sufficiency challenge under similar circumstances. But an examination of the testimony in *Sanchez* reveals that it is analogous to the testimony in this case.

In *Sanchez*, the expert witness, also a crime laboratory chemist, testified that the substance in question was "most likely cough syrup," and that the included promethazine was a "typical medicine" that "on its own has a valuable medicinal quality" as a cough suppressant that is added to cough syrups. *Sanchez*, 275 S.W.3d at 903. As was the case here, the chemist in *Sanchez* testified that the lab did not quantify the amount of promethazine in the substance. Further, when asked whether he could say that the promethazine *in that mixture* had a valuable medicinal quality even though he had not quantified the amount, the chemist gave ambiguous testimony, saying, "Yes, promethazine has been identified in this syrup." *Id.* Immediately after that, the chemist was asked whether

promethazine *generally* "on its own has a valuable medicinal quality," and he replied, "It has." *Id.*

In upholding the conviction in *Sanchez*, we cited the chemist's testimony that promethazine generally has a "valuable medicinal quality" on its own "as a nonnarcotic cough-suppressant compound that is usually found in cough syrups or cough medicines." *Id.* at 905. We concluded,

> A jury could rationally find that the Promethazine (whatever its quantity in the substance) was "in sufficient proportion to confer on the [substance] valuable medicinal qualities." [The chemist's] testimony did not, as the court of appeals decided, establish just the mere presence of Promethazine. Rather, Chu's testimony established the presence of Promethazine that "on its own has a valuable medicinal quality." Evidence that the Promethazine in the substance "on its own has a valuable medicinal quality" is sufficient to support a finding that it was "in sufficient proportion to confer on the [substance] valuable medicinal qualities." Under these circumstances, the State was not required to quantify the Promethazine in the substance.

*Id.* We further noted that the chemist had not testified that a failure to quantify the promethazine "made him unable to say whether the Promethazine conferred 'valuable medicinal qualities' on the substance." *Id.*

Given the testimony in the instant case as compared to the testimony in *Sanchez*, a different result is not warranted here. Both in *Sanchez* and here, the chemists generally testified that promethazine has a valuable medicinal purpose and is typically paired with codeine in cough syrup. The quantity of promethazine was unknown in both cases. The chemist in *Sanchez* did not state with certainty that the promethazine *in that mixture* was enough to confer on the mixture some medicinal qualities apart from those conferred by

the codeine. When asked that particular question, his testimony essentially reiterated that promethazine was present and that promethazine generally has recognized medicinal properties. And yet we upheld the conviction there, presumably because the jury was permitted to infer that the promethazine had valuable medicinal qualities in the mixture—otherwise, there would be no purpose for the promethazine to have been present in the cough syrup in the first place.

Here, the chemist testified that promethazine is an antihistamine that is an active nonnarcotic ingredient with "medicinal qualities," and it was "prevalent" in this mixture in near-equal proportions to the codeine. While the defense's cross-examination focused on the chemist's lack of qualifications to definitively say, from a medical standpoint, whether there was enough promethazine in this mixture to actually confer medicinal qualities, her agreement that she was not a medical doctor and therefore could not make such an assertion to a degree of scientific medical certainty should not foreclose holding the evidence sufficient here. In *Sanchez*, we rejected the idea that explicit testimony was required to establish the quantity of promethazine necessary to support a jury's finding on this element. *Sanchez*, 275 S.W.3d at 905. Jenkins' only qualified testimony was in response to questions asking whether there was "enough" promethazine in this mixture to be medicinal on its own, but her testimony overall supported the conclusion that promethazine is medicinal and was prevalent in the mixture. The jury was permitted to draw reasonable inferences from these basic facts to the ultimate conclusion that because promethazine generally has

valuable medicinal qualities, its presence in the mixture at issue here was medicinal. In short, if we held the evidence was sufficient in *Sanchez*, we should do so here. I cannot discern any plausible basis for reaching a different result on these facts.

The court of appeals also cited this Court's subsequent opinion in *Miles v. State*, 357 S.W.3d 629 (Tex. Crim. App. 2011). In *Miles*, the issue was slightly different—we were initially tasked with discerning the codeine possession offense with which the defendant had actually been charged. *Id.* at 633. After determining that *Miles* had been charged with penalty group 1 codeine possession, we held the evidence was insufficient because it failed to negate the lesser penalty groups, including penalty group 4. *Id.* at 638. We reasoned that the chemist's testimony simply noting the presence of promethazine and that it was an antihistamine "contained no implications supporting a finding with respect to the therapeutic or medicinal qualities, or lack thereof, of the amount or concentration of promethazine in the particular substances seized and tested in this case." *Id*.  In contrast to the chemist's testimony in *Miles*, Jenkins did testify that promethazine generally has medicinal qualities and was prevalent in the mixture at issue. Thus, the evidence in this case is more like the evidence in *Sanchez*, and less like the evidence in *Miles*, such that *Miles* does not foreclose holding the evidence sufficient here. Alternatively, given the unusual circumstances in *Miles* involving the State's failure to allege a particular penalty group, it is arguable that *Miles* should be limited to its facts.

Based on the foregoing, the evidence in this record is sufficient to show that the

promethazine in the substance possessed by Appellant conferred valuable medicinal qualities on the mixture apart from those conferred by codeine alone. By adopting the court of appeals' conclusion rejecting the jury's finding, the Court fails to view the evidence in a light most favorable to the verdict and fails to permit the drawing of reasonable inferences by the jury. Therefore, I respectfully dissent.

Filed: September 22, 2021
Publish