.Opinion issued November 1, 2007











In The

Court of Appeals

For The

First District of Texas






NO. 01-06-00210-CR






STEVEN SANCHEZ, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from County Court at Law No. 15

Harris County, Texas

Trial Court Cause No. 1320995






O P I N I O N

 A jury convicted appellant, Steven Sanchez, of possession of a controlled
substance, and the trial court assessed punishment at 180 days in prison, probated for
18 months, and a $750 fine. See Tex. Health & Safety Code Ann. § 481.118(a)
(Vernon 2003). In six points of error, appellant challenges (1) the legal and factual
sufficiency of the evidence to support his conviction, (2) the trial court's denial of
appellant's motion for directed verdict, (3) the trial court's admission of certain
testimony, and (4) the trial court's overruling appellant's motion for new trial. We
sustain the challenge to the legal sufficiency of the evidence, reverse the trial court's
judgment, and render a judgment of acquittal.

BACKGROUND


 Officer Hobbs of the Houston Police Department (HPD) pulled over a vehicle
with two occupants after randomly running the license plate and finding several City
of Houston traffic warrants. Hobbs observed no furtive gestures by either occupant
during the course of the stop. Appellant was sitting in the front passenger seat of the
vehicle. After arresting the driver for operating a motor vehicle without a license,
Hobbs asked appellant to get out of the car so that Hobbs could take an inventory of
the vehicle. At this time, Sergeant Macintosh-Beatson arrived on the scene and, at
Hobbs's request, placed appellant in the back seat of Macintosh-Beatson's police car. 
While taking inventory of the car, Hobbs found an open plastic baby bottle containing
residue of a thick, red liquid under the front passenger seat where appellant had been
sitting. Hobbs testified that the consistency, smell, and appearance of the substance
in the bottle was consistent with liquid codeine. In addition to the baby bottle, Hobbs
described finding "fresh red liquid stains" on the front passenger floorboard and on
the console separating the driver and passenger. Hobbs placed appellant under arrest
and, in a pat-down search, found two "wads" of cash totaling $2,892.29 in the front
pockets or appellant's pants. 

 Officer Guerrero, a narcotics dog handler, was called to the scene to assist in
the investigation. His dog was trained to "alert" to heroin, crack, cocaine, codeine,
methamphetamine, and marijuana. However, the dog is unable to distinguish between
any of the categories of narcotics when it gives an alert. Guerrero testified that his
dog gave an alert on the cash found in appellant's pockets. 

 Joseph Chu, an HPD Crime Laboratory chemist, testified regarding the
substance found in the baby bottle. Relevant portions of his testimony follow: 

 Q [State]: Now, based on your analysis of State's Exhibit 2, the
contents there, will you tell the jury what it contained, sir?

 

 A [Chu]: This typical item contains two compounds. The first
one is codeine and the second one is Promethazine. (1)


 . . . 

 

 Q [Defense, on voir dire in presence of the jury]: Mr. Chu, were
you able to determine the amount of Promethazine that was in the
bottle?

 

 A: No, in the laboratory we don't perform quantifications on
the Promethazine as well as codeine.

 

 Q: You are not able to determine the quantity of Promethazine
that was contained within the baby bottle. Is that right?

 

 A: HPD has no policies and no procedure at the time to
determine the quantity of codeine and Promethazine.


 Q: I understand but, yes or no, you were not able to determine
the amount of Promethazine that was contained within the bottle? 


 A: No. 


 Q: You have no scientific way of determining unless the
compound is brought to you with no more than 200 milligrams of
codeine and any of its salts per 100 milliliters and per 100 grams?


 A: No, I cannot do a scientific inclusion. I can only do
assumptions.

 

 . . . .


 Q [State]: Based on your training and experience and the testing
you did in the lab, did you determine whether the substance in that bottle
had a compound containing not more than 200 milligrams of codeine
and any of its salts per 100 milliliters or 100 grams? 


 . . . .


 A: Usually you can see the contents in this bottle it is a liquid. 
It is like a syrup material. Most likely which we call cough syrup and
cough syrups contain four compounds which is sugar, glucose, alcohols,
which is ethanol, Promethazine and codeines. Usually the cough syrups,
the concentration of codeine will last 200 milligrams per 100 mil. 


 . . . .


 Q: Now, does that mean if you can't quantify, does that mean
you cannot tell whether or not the substance that is brought to you
contains codeine?


 A: It is absolutely codeine. We can identify the compound. 
However, we cannot determine the quantity. 


 . . . .

 

 Q [Defense counsel, cross]: Since you don't have enough
information to quantify how much Promethazine was in that solution,
you cannot testify to the jury and tell them whether or not the
Promethazine had a valuable medicinal quality, can you?

 

 A: Yes. Promethazine has been identified in this syrup.

 

 Q: And Promethazine on its own has a valuable medicinal
quality, doesn't it?

 

 A: It has.

 

 Q: But the question is can the amount of Promethazine that is
contained and identified in that substance carry on a valuable medicinal
quality other than that possessed by the narcotic which is codeine? 
There's no way you can answer that because you cannot quantify how
much was in there, correct?

 

 A: No, I cannot quantify it but the compound is identified and
we know Promethazine[;] it is a dangerous drug. It has to be prescribed
by physicians.

 

 . . . .

 

 Q: But you do not know whether the amount, I think what you
testified to, that is contained within that bottle had a valuable medicinal
quality?

 

 A: I cannot testify for the quantity of the Promethazine existed
there. 


 On redrect, the State elicited the following testimony from Chu: 

 Q: Mr. Chu, you know beyond a reasonable doubt that there
was codeine in this mixture, right? 


 A: That's correct. 


 Q: You know beyond a reasonable doubt there is Promethazine
in this mixture, right?


 A: That's correct. 


 Q: And you know beyond a reasonable doubt that
Promethazine is used as a cough suppressant, right? 


 A: That's correct. 


 Q. And you know beyond a reasonable doubt that there wasn't
more than 200 milligrams of codeine in that substance, right? 


 . . . .


 A: No, I haven't seen any cough syrups more than 200
milligrams per hundred mil.


 . . . .


 Q: And this entire substance, the codeine, the Promethazine,
the sugar, the water, whatever was in there was not more than 28 grams,
right?


 A: That's correct.


 Appellant's counsel moved for a directed verdict based on Chu's testimony that
he could not quantify the amount of Promethazine. The trial court overruled the
motion, and the jury found appellant guilty as charged. 

DISCUSSION


Sufficiency of the evidence

 Appellant was charged by information under sections 481.105(1) and 481.118
of the Health and Safety Code. Section 481.105(1) provides:

 Penalty Group 4 consists of:

 (1) a compound, mixture, or preparation containing limited
quantities of any of the following narcotic drugs that includes one or
more nonnarcotic active medicinal ingredients in sufficient proportion
to confer on the compound, mixture, or preparation valuable medicinal
qualities other than those possessed by the narcotic drug alone . . . . 


Tex. Health & Safety Code Ann. § 481.105(1) (Vernon 2003). 

Section 481.118 provides:

 Offense: Possession of Substance in Penalty Group 4


 (a) Except as authorized by this chapter, a person commits an
offense if the person knowingly or intentionally possesses a controlled
substance listed in Penalty Group 4, unless the person obtained the
substance directly from or under a valid prescription or order of a
practitioner acting in the course of practice.

 (b) An offense under Subsection (a) is a Class B misdemeanor if
the amount of the controlled substance is, by aggregate weight,
including adulterants or dilutants, less than 28 grams.


Tex. Health & Safety Code Ann. § 481.118 (a), (b) (Vernon 2003).

The information contained the following language:

 Steven Sanchez . . . did then and there unlawfully intentionally and
knowingly possess and attempt to possess a controlled substance, to-wit:
any compound, mixture, and preparation containing limited quantities
of any of the following narcotic drugs that also contain one or more
nonnarcotic active medicinal ingredients in sufficient proportion to
confer on the compound, mixture, and preparation valuable medicinal
qualities other than those possessed by the narcotic drug alone: namely
a compound containing not more than 200 milligrams of codeine, and
any of its salts per 100 milliliters and per 100 grams, weighing by
aggregate weight, including any adulterants and dilutants, less than 28
grams.


 In his first point of error, appellant claims that the evidence regarding the
quantity of Promethazine found in the mixture was legally insufficient to support the
guilty verdict. Appellant contends that the State has not proved that the nonnarcotic,
Promethazine, was present in sufficient proportion to confer valuable medicinal
qualities other than those possessed by codeine alone, as required by the statute,
because the HPD chemist could not quantify the amount of codeine or the amount of
Promethazine that had been contained in the liquid. 

 In reviewing the evidence on legal sufficiency grounds, we view the evidence
in the light most favorable to the prosecution to determine whether any rational trier
of fact could have found the essential elements of the offense beyond a reasonable
doubt. King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). In addition, we
should "determine whether the necessary inferences are reasonable based upon the
cumulative force of all the evidence when viewed in the light most favorable to the
verdict." Hooper v. State, 214 S.W.3d 9, 16-17(Tex. Crim. App. 2007).

 The State is required to prove every element of the offense listed in the
information beyond a reasonable doubt. See Juarez v. State, 198 S.W.3d 790, 793
(Tex. Crim. App. 2006) (stating that elements of offense must be charged in
indictment, submitted to jury, and proven by State beyond reasonable doubt). 
Therefore, the State was required to prove that appellant (1) possessed (2) a mixture
containing not more than 200 milligrams of codeine per 100 milliliters that also (3)
contains one or more nonnarcotic active medicinal ingredients (4) in sufficient
proportion to confer on the mixture valuable medicinal qualities other than those
possessed by the codeine alone, (5) weighing by aggregate weight, including any
adulterants or dilutants, less than 28 grams. Thus, the mere presence of a nonnarcotic
active medicinal ingredient is not sufficient to establish that the mixture falls within
Penalty Group 4. The nonnarcotic must be in sufficient proportion to confer on the
mixture valuable medicinal qualities other than those possessed by the narcotic alone.

 Chu's testimony established that both codeine and Promethazine were in the
residue in the baby bottle and that the substance was like a syrup, most likely cough
syrup, and contained the four main ingredients of cough syrup--glucose and alcohol,
in addition to codeine and Promethazine. However, Chu testified that the HPD
laboratory could not measure the quantity of codeine and Promethazine in the
solution. We find no cases interpreting the "nonnarcotic in sufficient proportion"
element in a possession of a Penalty Group 4 controlled substance case. 

 Both parties cite Dudley v. State, 58 S.W.3d 296, 297 (Tex. App.--Beaumont
2001, no pet.), in which the defendant was charged with possession of a Penalty
Group 4 controlled substance. However, the issue in Dudley was the concentration
of the codeine, not the proportion of the nonnarcotic medicinal ingredient. Id. at 299. 
In Dudley, the State's laboratory chemist testified that the liquid contained a
combination of ingredients commonly found in cough syrup that contains codeine in
a concentration of less than 200 milligrams per 100 milliliters of syrup. Id. In
addition, the written laboratory report setting out the evidence as to the codeine
concentration was admitted into evidence. Id. In the present case, the chemist
testified that he could not quantify the codeine or Promethazine and could only make
assumptions. Thus, Dudley is distinguishable. 

 The State cites Melton v. State, 120 S.W.3d 339, 344 (Tex. Crim. App. 2003),
for the proposition that the State is no longer required to determine the amount of the
controlled substance and the amount of adulterant and dilutant that constitute the
mixture. In Melton, the defendant was charged with possession of Penalty Group 1
cocaine. Id. at 340. He argued that the State did not prove that cocaine was present
in all of the rocks recovered, and therefore did not establish the aggregate weight of
the cocaine. Id. at 340. The Court rejected this argument and held that the State has
to prove only that the aggregate weight of the controlled substance mixture, including
adulterants and dilutants, equals the alleged minimum weight. Id. at 344. 

 In the present case, appellant was charged by information with possession of
a Penalty Group 4 controlled substance. In Penalty Group 4, the codeine and
Promethazine combination is the controlled substance. In contrast, in Penalty Group
1, cocaine alone is the controlled substance, and anything added to bulk up the
amount of material is by definition an adulterant or dilutant. See Tex. Health &
Safety Code Ann. §§ 481.102(3)(D), 481.115 (Vernon 2003); see also Melton, 120
S.W.3d at 344. Consequently, Melton is not applicable to this case because
Promethazine is not an adulterant or dilutant. Rather, it is the "nonnarcotic active
medicinal ingredient" required by section 481.105(1) to meet the definition of a
Penalty Group 4 substance. 

 The State was required to prove, as one of the elements of the offense, that the
nonnarcotic active medicinal ingredient was in sufficient proportion to confer on the
mixture valuable medicinal qualities other than those possessed by the codeine alone. 
Chu testified repeatedly that he was not able to quantify the Promethazine in the
substance. Without such quantification, his testimony does no more than establish
the mere presence of Promethazine. Thus the State has failed its burden to prove that
Promethazine was in the mixture in sufficient proportion to confer on the mixture
valuable medicinal qualities other than those possessed by the codeine alone.

 Accordingly, we hold that the evidence offered by the State was legally
insufficient to support the jury's verdict. Therefore, we sustain appellant's first point
of error. Because we sustain this point of error, we need not reach appellant's points
of error two through six.

 We reverse the judgment of the trial court and render a judgment of acquittal. 



 Sam Nuchia

 Justice


Panel consists of Justices Nuchia, Hanks, and Bland.


Publish. Tex. R. App. P. 47.2(b). 

1. Chu testified that Promethazine is a nonnarcotic cough suppressant.