Opinion issued April 3, 2008















In The

Court of Appeals

For The

First District of Texas






NO. 01-07-00152-CR






MARK ELLIOT MASSIE, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 185th District Court

Harris County, Texas

Trial Court Cause No. 1081487






MEMORANDUM OPINION

 A jury found appellant, Mark Elliot Massie, guilty of the offense of possession
of a Penalty Group 4 controlled substance, a second degree felony. See Tex. Health
& Safety Code Ann. § 481.118(a) (Vernon 2003). The jury assessed punishment
at five years' imprisonment, and the trial court suspended the sentence and placed
appellant on community supervision for five years. In two issues, appellant
challenges the legal and factual sufficiency of the evidence.

 We reverse and render.

 Background


 Off-duty Houston police officer, Paul Steffenauer met his colleague, Abraham
Vanderberry, who was also off-duty, at a gas station to pick up a pistol for use in a
training class for undercover work in the narcotics division. While at the gas station,
they saw what they believed, based on their narcotics training and experience, to be
a drug deal in process. They called for a patrol unit, and detained appellant and
another man, who had driven the car appellant rode in. At the time, appellant was
found in possession of a Sunkist soda bottle containing a mixture later found to
contain soda, codeine, and promethazine.

 Appellant was charged by indictment with possession of a controlled substance
in Penalty Group 4, specifically, "any compound, mixture, and preparation containing
limited quantities of any of the following narcotic drugs that also contain one or more
nonnarcotic active medicinal ingredients in sufficient proportion to confer on the
compound, mixture, and preparation valuable medicinal qualities other than those
possessed by the narcotic drug alone: namely a compound containing not more than
200 milligrams of codeine, and any of its salts per 100 milliliters and per 100 grams,
weighing by aggregate weight, including any adulterants and dilutants, more than 200
grams and less than 400 grams."

 At trial, Sharmista Patel, a criminalist for the Houston Police Department
Crime Laboratory, testified about the lab work she performed on the mixture in the
Sunkist bottle. Patel, who has more than sixteen years experience testing drugs at the
crime lab, testified that the liquid in the soda bottle seized at the time of arrest
weighed 308.1 grams. She further testified that she found codeine and promethazine
in the mixture and that the soda was an adulterant or dilutant. On direct examination,
she said that she did not determine the concentration of codeine or promethazine in
the mixture. 

 Q. Now, do you know--did you perform any type of quality test on this
substance?


 A. No, ma'am.


 Q. And why not?


 A. It's not standard operating procedure in our lab and it does not affect on
[sic] the laws. So, we don't do anymore the percentage.


She again reiterated this on cross-examination.

 Q. And it is my understanding that you did not test the amount of codeine
that is in this container? We don't know how much pure substance is in
this container, do we?


 A. It's not in standard operating procedure and it does not affect on [sic]
the laws; so, we are not doing the percentage, purity.


 Q. Right. So, you don't know how much of this substance in the bottle is
a soft drink as opposed being codeine.


 A. I don't know.


 Q. Is that correct?


 A. I don't know. I cannot tell that.


 Q. It could be 99.9 percent soft drink and percentage of codeine; is that
correct?


 A. Anything possible.


 Q. And the substance that is normally--that you found in this drink, is it
normally used as a cough syrup? Is that what we're talking about?


 A. Yes, ma'am.

 [State objects.]


 A. Cough syrup.


 Q. And do you know what that other liquid is?


 A. I did not test it, but from the bottle I can say Sunkist. That's it.


 Prior to the close of the State's case-in-chief, Patel again took the stand, and
the prosecutor attempted to clarify her testimony regarding the mixture.

 Q. Now, the next part on there talks a little bit about--to keep going--a
compound containing not more than 200 milligrams of codeine and any
of its salts per 100 milliliters and per 100 grams, weighing by aggregate
weight, including any adulterants and dilutants, more than 200 grams
and less than 400 grams.


 Now, that part. I'd like to talk to you a little bit about that. When we
have something that is a mixture, correct?


 A. Yes, ma'am.


 Q. Now, you've been testing codeine for, you said, how many years? How
long have you been at the lab?


 A. 18 years.


 Q. Okay. And when you have a substance that's not pure codeine, okay,
just generally speaking, is it going to be less than 200 grams per
milliliters in the hundred of--let me make sure I get it right--100
milliliters per 100 salts, is that going to be in that lowest penalty group
like that when it's a mixture?


 A. Yes, ma'am.


 Q. Just so we're clear, you didn't actually do a quantity test, do you, like a
quality?


 A. No, no ma'am.


 Q. Right. Because you don't do it on a codeine, right?


 A. Right.


 Q. But in a mixture case, that will fall into this lowest penalty group, right?


 A. Generally.


 Appellant's counsel moved for an instructed verdict based on Patel's testimony,
arguing that the State did not prove "a compound containing not more than 200
milligrams of codeine and any of its salts per 100 milliliters and per 100 grams." The
trial court denied appellant's motion for instructed verdict, and the jury found
appellant guilty as charged.

Standard of Review

 Appellant challenges the legal and factual sufficiency of the evidence to
support his conviction for possession of codeine, arguing that the State did not prove
that the mixture seized from him at his arrest met the Penalty Group 4 definition. 
Except as otherwise authorized, a person commits an offense if the person knowingly
or intentionally possesses a controlled substance listed in Penalty Group 4, unless the
person obtained the substance directly from or under a valid prescription or order of
a practitioner acting in the course of practice. Tex. Health & Safety Code Ann.
§ 481.118(a) (Vernon 2003). Penalty Group 4 includes a compound, mixture, or
preparation that includes not more than 200 milligrams of codeine per 100 milliliters
or per 100 grams and one or more nonnarcotic active medicinal ingredients in
sufficient proportion to confer on the compound, mixture, or preparation valuable
medicinal qualities other than those possessed by the narcotic drug alone. Id.
§ 481.105(1) (Vernon 2003). Possession of codeine is a felony of the second degree,
if the amount of codeine possessed is, by aggregate weight, including adulterants or
dilutants, 200 grams or more but less than 400 grams. Id. § 481.118(d).

 The State is required to prove every element of the offense listed in the
indictment beyond a reasonable doubt. Sanchez v. State, No. 01-06-00210-CR, 2007
WL 3227744 [Tex. App.--Houston [1st Dist.] Nov. 1, 2007, pet. filed); see Juarez
v. State, 198 S.W.3d 790, 793 (Tex. Crim. App. 2006) (stating that elements of
offense must be charged in indictment, submitted to jury, and proven by State beyond
reasonable doubt). Therefore, the State was required to prove that appellant (1)
possessed (2) a mixture containing not more than 200 milligrams of codeine and any
of its salts per 100 milliliters and per 100 grams, that also (3) contains one or more
nonnarcotic active medicinal ingredients (4) in sufficient proportion to confer on the
mixture valuable medicinal qualities other than those possessed by the codeine alone,
(5) weighing by aggregate weight, including any adulterants or dilutants, more than
200 grams and less than 400 grams. See Sanchez, 2007 WL 3227744 at *4. "Thus,
the mere presence of a nonnarcotic active medicinal ingredient is not sufficient to
establish that the mixture falls within Penalty Group 4. The nonnarcotic must be in
sufficient proportion to confer on the mixture valuable medicinal qualities other than
those possessed by the narcotic alone." Id.


Legal Sufficiency

 In evaluating the legal sufficiency of the evidence, we view the evidence in the
light most favorable to the verdict and determine whether any rational trier of fact
could have found the essential elements of the offense beyond a reasonable doubt. 
Vodochodsky v. State, 158 S.W.3d 502, 509 (Tex. Crim. App. 2005). We note that
the trier of fact is the sole judge of the weight and credibility of the evidence.
Margraves v. State, 34 S.W.3d 912, 919 (Tex. Crim. App. 2000). Thus, when
performing a legal sufficiency review, we may not re-evaluate the weight and
credibility of the evidence and substitute our judgment for that of the factfinder. 
Dewberry v. State, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). We must resolve any
inconsistencies in the evidence in favor of the verdict. Curry v. State, 30 S.W.3d 394,
406 (Tex. Crim. App. 2000).

Penalty Group 4 Controlled Substance


 In Dudley v. State, the Beaumont Court of Appeals held the evidence was both
legally and factually sufficient to support a conviction for possession of a controlled
substance under Penalty Group 4. Dudley v. State, 58 S.W.3d 296, 300 (Tex.
App.--Beaumont 2001, no pet). In Dudley, when the defendant was arrested, the
police seized a styrofoam cup containing a liquid that smelled like cough syrup. Id.
at 297. Although the State's laboratory analyst testified that she did not determine
the concentration of codeine in the liquid, she did testify that the liquid contained
both codeine and promethazine. Id. at 299. She said, "And this is a combination
commonly found in cough syrup type preparations that contain Codeine in a
concentration of less than 200 milligrams per 100 milliliters of syrup." Id. In
addition, the written laboratory report provided identical information about the
codeine concentration. Id. 

 Likewise, in Reed v. State, the Fourteenth Court of Appeals held the evidence
was both legally and factually sufficient to support a conviction for possession of a
controlled substance under Penalty Group 4. Reed v. State, 158 S.W.3d 44, 51 (Tex.
App.--Houston [14th Dist.] 2005, pet. ref'd). In Reed, the defendant argued that the
laboratory report, which matched the description for Penalty Group 3, conflicted with
the testimony from the laboratory analyst, who "repeatedly testified that the seized
codeine was within Penalty Group 4." Id. The analyst explained that the report did
not contradict his testimony because in some cases a liquid might be included in more
than one Penalty Group. Id. at 50-1.

 We recently addressed a related issue in Sanchez v. State, 2007 WL 3227744 
In Sanchez, the defendant challenged the legal sufficiency of the evidence that
nonnarcotic promethazine was present in sufficient proportion to confer valuable
medicinal qualities other than those possessed by codeine alone, as the Penalty Group
4 definition requires. Id. at *3. When Sanchez was arrested, the police seized "an
open plastic baby bottle containing residue of a thick, red liquid under the passenger
seat where [the] appellant had been sitting." Id. at *1. The police crime laboratory
chemist testified that the liquid contained both codeine and promethazine and that
promethazine has a valuable medicinal quality and is used as a cough suppressant. 
Id. at *2-3. He also testified that he had not seen "any cough syrups more than 200
milligrams per hundred mil." Id. at *3. However, he clearly stated that he did not
quantify the promethazine in the liquid. Id. at *2-3. We held that this evidence was
legally insufficient.

 The State was required to prove, as one of the elements of the offense,
that the nonnarcotic active medicinal ingredient was in sufficient
proportion to confer on the mixture valuable medicinal qualities other
than those possessed by the codeine alone. Chu testified repeatedly that
he was not able to quantify the Promethazine in the substance. Without
such quantification, his testimony does no more than establish the mere
presence of Promethazine. Thus the State has failed its burden to prove
that Promethazine was in the mixture in sufficient proportion to confer
on the mixture valuable medicinal qualities other than those possessed
by the codeine alone.


Id. at *5.

Discussion

 Here, Patel testified that the liquid seized contained codeine and promethazine
but that she did not quantify either the codeine or the promethazine. Unlike Dudley,
no written laboratory report was admitted into evidence. In addition, Patel did not
clearly testify that "this is a combination commonly found in cough syrup type
preparations that contain Codeine in a concentration of less than 200 milligrams per
100 milliliters of syrup." See Dudley, 58 S.W.3d at 299. Rather, Patel simply agreed
with the prosecutor's question, which incorrectly stated the law, that a substance
"that's not pure codeine . . . is it going to be less than 200 grams per milliliters in the
hundred of . . .100 milliliters per 100 salts, is that going to be in that lowest penalty
group like that when it's a mixture?" Unlike the analyst in Reed, Patel did not testify
that the seized liquid was within Penalty Group 4. See Reed, 158 S.W.3d at 51. We
conclude that the State did not prove that the liquid seized from appellant was a
"mixture containing not more than 200 milligrams of codeine and any of its salts per
100 milliliters and per 100 grams."

 In addition, as in Sanchez, the testimony here was not legally sufficient to
prove that promethazine was present in the liquid "in sufficient proportion to confer
on the mixture valuable medicinal qualities other than those possessed by the codeine
alone." Sanchez, 2007 WL3227744 at *5.

Conclusion

 Accordingly, we hold that the evidence offered by the State was legally
insufficient to support the jury's verdict. Therefore, we sustain appellant's first issue. 
Because we sustain this issue, we do not reach appellant's second issue, the factual
sufficiency of the evidence.

 We reverse the judgment of the trial court and render a judgment of acquittal.




 Sam Nuchia

 Justice


Panel consists of Justices Nuchia, Hanks, and Higley.


Do not publish. Tex. R. App. P. 47.2(b).