

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-18-00374-CR
No. 07-18-00375-CR

DARREN LAMONT BIGGERS, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 235th District Court
Cooke County, Texas
Trial Court Nos. CR17-00072 & CR17-00073; Honorable Jim Hogan, Presiding by Assignment

March 6, 2020

## OPINION

Before QUINN, C.J., and PIRTLE and PARKER, JJ.

Appellant, Darren Lamont Biggers, appeals from his convictions by jury of the offenses of (1) possession of a Penalty Group 4 controlled substance (codeine), in an amount over 400 grams,[1] and (2) tampering with physical evidence.[2] The jury assessed

---

[1] Trial Court Cause Number CR17-00073; Appellate Cause Number 07-18-00375-CR; TEX. HEALTH & SAFETY CODE ANN. § 481.118(a) (West 2017). An offense under this section is punishable by imprisonment for life or for a term of not more than 99 years or less than 5 years, and a fine not to exceed $50,000. Id. at § 481.118(e).

[2] Trial Court Cause Number CR17-00072; Appellate Cause Number 07-18-00374-CR; TEX. PENAL CODE ANN. § 37.09(a)(1) (West 2019). As indicted, as offense under this section is a third degree felony. Id. at § 37.09(c).

Appellant's sentence in each case at confinement for a term of sixty years and ninety-nine years, respectively, with the two sentences to be served concurrently.[3] Appellant challenges his convictions through two issues contending the evidence is legally insufficient to support his conviction for (1) possession of a controlled substance, Penalty Group 4, over 400 grams, and (2) tampering with evidence. We reverse and render a judgment of acquittal as to the possession of a controlled substance offense and we affirm the tampering with evidence offense.[4]

## BACKGROUND

Appellant's prosecution for these offenses stems from a drug investigation involving a confidential informant. A man who had been arrested for an unrelated crime told officers of the Cooke County Sherriff's Department that he could purchase methamphetamine from Appellant, a known drug trafficker. Acting as a confidential informant and in the presence of the investigating officers, the man made a phone call to Appellant. The phone call was recorded. During that call, the confidential informant made arrangements to meet Appellant on the side of a local Dollar General store and purchase $50 worth of methamphetamine.[5] In court, the officer identified the voices on the

---

[3] In addition to the primary offenses, as to each indictment, Appellant pleaded "true" to two prior felony offense enhancement paragraphs set forth in the indictment, with the second prior felony offense being for an offense committed subsequent to the first prior felony offense having become final. As a result, each offense was punishable by imprisonment for life or for any term of years of not more than 99 years or less than 25 years, without the possibility of a fine. TEX. PENAL CODE ANN. § 12.42(d) (West 2019).

[4] Originally appealed to the Second Court of Appeals, these appeals were transferred to this court by the Texas Supreme Court pursuant to its docket equalization efforts. TEX. GOV'T CODE ANN. § 73.001 (West 2013). Should a conflict exist between precedent of the Second Court of Appeals and this court on any relevant issue, these appeals will be decided in accordance with the precedent of the transferor court. TEX. R. APP. P. 41.3.

[5] In the call, the parties made reference to purchasing "ice cream," a term identified by the investigating officer as a "street word" for methamphetamine.

recording as those of Appellant and the confidential informant and the recording was introduced into evidence.

After making the call, officers and the informant drove around the Dollar General store until the informant told officers he had seen Appellant. Just as he had described in the phone call, Appellant was sitting in the passenger seat of a vehicle parked at the side of the building. Another individual was sitting in the vehicle with him. The officer with the confidential informant told another officer to make contact with Appellant because they had credible information he was going to be involved in a drug transaction. The other officer did as instructed and Appellant was temporarily detained "for a narcotics investigation."

When the investigating officer approached the vehicle, "the very first thing [he] noticed . . . was the overwhelmingly [sic] smell of marijuana . . . ." He then saw "a Sprite bottle and a white Styrofoam cup, both in the center console . . . filled with a purple-type substance." The officer "immediately believed . . . that it was possibly 'lean,' which is codeine cough syrup that people put in other drinks . . . ." According to testimony admitted at trial, codeine is a scheduled narcotic drug that is "[v]ery much" abused when it is mixed in this manner. When questioned, Appellant admitted the substance was "lean" and he offered to just pour it out since it belonged to his grandmother. He also stated, alternatively, both that he had a prescription for it and it was an over-the-counter medication. Subsequent field testing of the substance, with a field test kit specifically designed for lean, revealed that substance tested positive for codeine.

3

Based on this information, Appellant was arrested for possession of a controlled substance. A subsequent search of the vehicle revealed no methamphetamine, no other drug paraphernalia, no baggies or containers, and no drug residue. The only item the searching officer found that seemed out of place was a "hundred dollars laying in the [passenger-side] floorboard . . . ."[6] In one of Appellant's jail phone calls, made six days after his arrest, he stated that the person in the vehicle with him was also going to buy some methamphetamine from him, but he "ate everything." An investigating officer testified that Appellant was "referencing ingesting narcotics orally." The officer stated that Appellant said he "ate everything" when he saw the police block them in and he testified that people "often" eat drugs to get rid of them. Another officer testified that when he first approached the vehicle, he saw movement in the vehicle that "could have" been consistent with someone swallowing a baggie of methamphetamine.

The jury found Appellant guilty as charged in each indictment and, after a separate punishment hearing, assessed his punishment as previously noted. Appellant timely filed his notice of appeal.

STANDARD OF REVIEW

In a sufficiency review, we examine the evidence to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). *See also Adames v.*

---

[6] At trial, the officer described it as "a hundred-dollar bill folded three ways in the floorboard of the vehicle. It was just kind of out of place laying there, a hundred dollars in the floorboard."

*State*, 353 S.W.3d 854, 859 (Tex. Crim. App. 2011). In determining whether the evidence is legally sufficient to support a conviction, this court considers all the evidence in the light most favorable to the verdict and determines whether, based on that evidence and reasonable inferences to be drawn therefrom, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Queeman v. State*, 520 S.W.3d 616, 623 (Tex. Crim. App. 2017).

The fact finder is the sole judge of the credibility of the witnesses and the weight to be given to their testimonies, and a reviewing court must defer to those determinations and not usurp the fact finder's role by substituting its judgment for that of the jury. *Id.* (citing *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012)). In doing so, we give deference to the responsibility of the fact finder to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016). Faced with a record supporting contradicting inferences, a reviewing court must presume that the fact finder resolved any such conflicts in favor of the verdict, even if not explicitly stated in the record. *Queeman*, 520 S.W.3d at 622. Each fact need not point directly and independently to the appellant's guilt, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Id.* "The duty of the reviewing court is simply to ensure that the evidence presented supports the jury's verdict and that the State has presented a legally sufficient case of the offense charged." *Id.* "Under this standard, evidence may be legally insufficient when the record contains either no evidence of an essential element, merely a modicum of evidence of one element, or if

5

it conclusively establishes a reasonable doubt." *Britain v. State*, 412 S.W.3d 518, 520 (Tex. Crim. App. 2013) (citing *Jackson*, 443 U.S. at 320).

Legal sufficiency of the evidence is measured against the elements of the offense as defined by a hypothetically correct jury charge. *Thomas v. State*, 444 S.W.3d 4, 8 (Tex. Crim. App. 2014) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). Such a charge would be one that accurately sets out the law, is authorized by the indictment, does not unnecessarily restrict the State's theories of guilt, and adequately describes the particular offense for which the defendant was tried. *Gollihar v. State*, 46 S.W.3d 243, 253 (Tex. Crim. App. 2001); *Malik*, 953 S.W.2d at 240. In our review, we must evaluate all of the evidence in the record, both direct and circumstantial, regardless of whether that evidence was properly or improperly admitted. *Jenkins,* 493 S.W.3d at 599; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

### POSSESSION OF A CONTROLLED SUBSTANCE

Codeine is a controlled substance, appearing in multiple penalty groups, depending on the concentration of the substance. Relevant to the facts of this case, Penalty Group 4 consists of "a compound, mixture, or preparation containing limited quantities of [codeine] that includes one or more nonnarcotic active medicinal ingredients in sufficient proportion to confer on the compound, mixture, or preparation valuable medicinal qualities other than those possessed by the [codeine] alone: not more than 200 milligrams of codeine per 100 milliliters or per 100 grams." TEX. HEALTH & SAFETY CODE ANN. 481.105(1) (West Supp. 2019); *Miles v. State,* 357 S.W.3d 629, 633 (Tex. Crim. App. 2011).

"[A] person commits an offense if the person knowingly or intentionally possesses a controlled substance listed in Penalty Group 4, unless the person obtained the substance directly from or under a valid prescription or order of a practitioner acting in the course of practice." TEX. HEALTH & SAFETY CODE ANN. § 481.118(a) (West 2017); *Dudley v. State*, 58 S.W.3d 296, 298 (Tex. App.—Beaumont 2001, no pet.) (describing the placement of codeine in three separate penalty groups, with the distinguishing factor being particular qualitative properties).[7]

**ANALYSIS—ISSUE ONE**

As relevant to the indictment and facts presented, in order to affirm a conviction for possession of a Penalty Group 4 controlled substance, 400 grams or more, the State was required to prove (1) Appellant (2) knowingly or intentionally (3) possessed (4) more than 400 grams of a compound, mixture, or preparation (5) containing not more than 200 milligrams of codeine per 100 milliliters, (6) that also contained one or more nonnarcotic active medicinal ingredients (7) in a sufficient proportion to confer on the compound, mixture, or preparation valuable medicinal qualities other than those possessed by the

---

[7] Penalty Group 1 includes "[o]pium and opiate not listed in Penalty Group 3 or 4, and a salt compound, derivative, or preparation of opium or opiate, other than thebaine derived butorphanol, nalmefene and its salts, naloxone and its salts, and naltrexone and its salts, but including . . . Codeine not listed in Penalty Group 3 or 4 . . . ." TEX. HEALTH & SAFETY CODE ANN. § 481.102(3)(A) (West Supp. 2019).

Penalty Group 3 includes "a material, compound, mixture, or preparation containing limited quantities of the following narcotic drugs, or any of their salts . . . not more than 1.8 grams of codeine, or any of its salts, per 100 millimeters or not more than 90 milligrams per dosage unit, with an equal or greater quantity of an isoquinoline alkaloid of opium . . . ." TEX. HEALTH & SAFETY CODE ANN. § 481.104(a)(4) (West Supp. 2019).

Penalty Group 4 includes "a compound, mixture, or preparation containing limited quantities of any of the following narcotic drugs that includes one or more nonnarcotic active medicinal ingredients in sufficient proportion to confer on the compound, mixture, or preparation valuable medical qualities other than those possessed by the narcotic alone: not more than 200 milligrams of codeine per 100 milliliters or per 100 grams . . . ." TEX. HEALTH & SAFETY CODE ANN. § 481.105(1) (West 2017).

7

codeine alone.  TEX. HEALTH AND SAFETY CODE ANN. §§ 481.105(1); 481.118(a) (West 2017 and West Supp. 2019).

Under section 481.105(1) of the Texas Health and Safety Code, in order for possession of the compound, mixture, or preparation to be an offense classified as a Penalty Group 4 controlled substance, the concentration level of the codeine must be "not more than 200 milligrams of codeine per 100 milliliters or per 100 grams."  *Id.* at § 481.105(1).  Similarly, the mere presence of a nonnarcotic active medicinal ingredient is not sufficient to establish that the compound, mixture, or preparation is a Penalty Group 4 controlled substance; rather, the nonnarcotic active medicinal ingredients must be in a sufficient proportion to convey on the mixture "valuable medicinal qualities" other than those possessed by the codeine alone.  *Id.*  In addition, while the State is not required to prove the precise quantitative amount of the codeine or the adulterants and dilutants, it is required to prove that the aggregate weight of the compound, mixture, or preparation, including adulterants, if any, equals or exceeds the minimum weight for the offense charged.  *Sanchez v. State*, No. 01-06-00210-CR, 2010 Tex. App. LEXIS 4857, at *24 (Tex. App.—Houston [1st Dist.] June 24, 2010, no pet.) (mem. op., not designated for publication) (citing *Melton v. State*, 120 S.W.3d 339, 344 (Tex. Crim. App. 2003)).  Weights and concentrations are, however, entirely different quantitative measurements and, where required by statute, the State must establish each element separately beyond a reasonable doubt.

Here, the State submitted to the Texas Department of Public Safety Crime Laboratory for testing a box containing two items—later identified as State's Exhibit 7 and State's Exhibit 8.  The chemist proffered by the State as its expert witness testified that

when she opened the two items found in the box, they both "had a similar odor to cough syrup or something of the like." From there she performed two presumptive tests on each item—a Marquis Color Test and a UV Scan. The results from both tests, as to both items, were "inconclusive." From there, the chemist performed a gas chromate-graph/mass spectrometer (GC/MS) test to determine that both Exhibits 7 and 8 contained the presence of codeine and promethazine. The report of the chemist was introduced indicating that the first item was a plastic bottle that contained a clear liquid weighing 654.97 grams (+/- 0.04 grams) net weight, containing an unspecified amount of codeine and promethazine, and that the second item was, likewise, a plastic bottle that contained a clear liquid weighing 327.57 grams (+/- 0.04 grams) net weight, containing an unspecified amount of codeine and promethazine. Without objection, the chemist further testified that codeine and promethazine are usually seen together in common cough syrups. When the State's attorney asked the chemist whether the liquid contents in Exhibits 7 and 8 "contain not more than 200 milligrams of codeine per 100 milliliters," the defense attorney objected before the witness could answer. At that point, the trial court allowed defense counsel to take the witness on voir dire.

On voir dire, the chemist stated the DPS Crime Lab did not perform a "quantitative test" to determine the concentration of codeine in the two samples because it was not asked to perform such an analysis. Instead, it was asked simply to "examine for the presence of a controlled substance," which it did. As such, the chemist candidly admitted that she did not know and could not testify to the concentration level of the codeine in either sample. Following voir dire, the trial court overruled defense counsel's objection, whereupon the State's counsel asked the chemist whether she had ever performed "these

tests" on common cough syrup and whether cough syrup contained more than 200 milligrams of codeine per 100 milliliters. Again, the chemist emphasized that she could not testify as to the concentration of codeine in the test samples at issue, but offered the non-responsive, completely speculative statement that cough syrup "labels do *usually* state that it is a Penalty Group 4 and that it has less than 200 and –." (Emphasis added). Before the witness could finish her answer, she was interrupted by State's counsel saying, "Okay. Has the -- not more than 200 milligrams of codeine per 100 milliliters?" To which, the chemist simply answered, "Yes."

In other testimony, the chemist told the jury that promethazine was a nonnarcotic active medicinal ingredient,[8] although she never opined as to whether the combination of promethazine and codeine had "valuable medicinal qualities" other than those possessed by the codeine alone. When the prosecutor asked if the liquid seized from Appellant had "valuable medicinal qualities, other than those possessed by the codeine alone," defense counsel's objection was again overruled by the trial court. After the prosecutor rephrased his question to ask, "[d]oes the promethazine add something to *this* mixture medicinally . . ." the chemist simply answered, "It *appears* to, but *I can't say for sure*." (Emphasis added).[9]

Based on this record, Appellant asserts the evidence presented was insufficient because the State was unable to provide any testimony establishing an essential element

---

[8] Independent Internet research establishes that promethazine is the generic form of the brand-name drug Phenergan and that it is used as an antihistamine, sedative, and anti-nausea drug. It belongs in a group of drugs called phenothiazines and it is not a narcotic. *See https://www.drugs.com/prometh-azine.html* (last visited March 2, 2020).

[9] On voir dire examination, the chemist directly stated she did not know how much promethazine or codeine was in the substance she tested.

of the State's case, namely the level of concentration of codeine in the substances possessed by Appellant. Furthermore, Appellant contends the evidence was insufficient because the State only established the mere presence of promethazine, rather than the presence of promethazine in a sufficient proportion to the whole to confer on the compound, mixture, or preparation valuable medicinal qualities other than those possessed by the codeine alone. We agree.

At best, the chemist stated the samples recovered from the vehicle in which Appellant was a passenger was a compound, mixture, or preparation containing 982.54 net grams of a substance that contained codeine and promethazine. That's it. She failed to establish the concentration level of the codeine was not more than 200 milligrams of codeine per 100 milliliters, and she did not establish the presence of promethazine in a sufficient proportion to convey on the mixture "valuable medicinal qualities" other than those possessed by the codeine alone. Furthermore, these two essential elements were not established by the testimony of any other witness.[10]

Appellant analogizes this case to *Miles*, 357 S.W.3d at 638. There, the Court found the evidence insufficient where there was no testimony regarding the therapeutic or medicinal qualities of the promethazine in the sample in that case. *Id.* In *Miles*, the chemist testified codeine and promethazine are often prescribed together and that promethazine is an antihistamine; however, there was no evidence that "expressly stated or implied whether the promethazine found in these particular substances was or was not

---

[10] A compound, mixture, or preparation containing the mere presence of codeine, presumptively contains *at least* "not more than 200 milligrams of codeine per 100 milliliters." While the compound, mixture or preparation might also contain *more* than 200 milligrams of codeine per 100 milliliters, as to that element of the offense, the evidence is not insufficient if it merely establishes the presence of codeine in a substance alleged to be a Penalty Group 4 controlled substance.

11

'in sufficient proportion to confer on the compound, mixture, or preparation valuable medicinal qualities other than those possessed by the narcotic drug alone.'" *Id.* (citation omitted). Under those circumstances, the Court of Criminal Appeals held that from the evidence presented, "a rational juror could not infer whether the promethazine was or was not in recognized therapeutic amounts or in sufficient proportion to confer on the compound valuable medical qualities other than those possessed by the codeine alone." *Id.* Because the evidence was insufficient as to an essential element of that particular offense, the Court had no option but to reverse and render a judgment of acquittal. *Id.*

By contrast, the State relies in part on *Sanchez v. State*, 275 S.W.3d 901, 904-05 (Tex. Crim. App. 2009), wherein the evidence was found to be sufficient. In *Sanchez*, the intermediate appellate court found the evidence to be insufficient because the State's expert witness "was not able to *quantify* the Promethazine in the substance." *Sanchez v. State*, 264 S.W.3d 132, 137 (Tex. App. Houston [1st Dist.] 2007), *rev'd*, 275 S.W.3d at 905. The Court of Criminal Appeals reversed the lower court's ruling because it found the State was not required to quantify the amount of promethazine in the substance tested so long as the expert could testify as to the qualitative property of the compound, mixture, or preparation. There, when asked whether promethazine on its own had valuable medicinal qualities, the witness responded affirmatively. The Court found that testimony established more than the mere presence of promethazine, thus supporting a finding that the promethazine was "in sufficient proportion to confer on the substance valuable medicinal qualities." *Sanchez*, 275 S.W.3d at 905.

The State argues that like *Sanchez*, we should find the evidence in this case to also be sufficient. It asserts that here, the jury had before it enough evidence from which

it could reasonably infer the codeine was in a sufficient proportion to satisfy the requisites of the statute and that the promethazine, similarly, had valuable medicinal qualities other than those possessed by the codeine alone. According to the State's theory, because the jury could find that the substance possessed *smelled* like prescription cough syrup, it could conclude that the substance had the same qualities as prescription cough syrup; and, that because prescription cough syrups *typically* contain both codeine and promethazine and, according to *some* labels (as opposed to tests), *usually* contain Penalty Group 4 strength codeine and promethazine in sufficient proportion to confer on the substance valuable medicinal qualities other than those possessed by the codeine alone, then the substance in this case must be a Penalty Group 4 controlled substance. We disagree. If an expert chemist were to testify that the scientific method relied upon to reach his conclusion was nothing more than the stacking of one inference upon another, upon another, upon another, upon another, upon another—as the State proposes in this case—we would be compelled to throw that testimony out as rank "junk science." Reaching such a conclusion spans an intellectual gap-too-far—a gap that we cannot tolerate in a system based upon proof beyond a reasonable doubt. Because the record contains no evidence of an essential element of the offense of possession of a Penalty Group 4 controlled substance or, alternatively, because the record contains merely a modicum of evidence of an essential element of the offense of possession of a Penalty Group 4 controlled substance, we sustain Appellant's first issue and find the evidence insufficient to support his conviction as to that offense.

### *BOWEN* ANALYSIS

In *Bowen v. State*, 374 S.W.3d 427, 431-32 (Tex. Crim. App. 2012), the Court of Criminal Appeals held that if an intermediate appellate court concludes that the evidence supporting a conviction is legally insufficient, the court is not necessarily limited to ordering an acquittal, but must instead remand the case to the trial court for modification of the judgment to reflect a conviction of any lesser-included offense and conduct a new punishment hearing. Furthermore, where there is proof beyond a reasonable doubt of all elements of a lesser-included offense, an appellate court should render a judgment of conviction as to that lesser-included offense. *Britain*, 412 S.W.3d at 521.

After *Britain*, in *Thornton v. State*, 425 S.W.3d 289, 299-300 (Tex. Crim. App. 2014) (footnote omitted), the Court of Criminal Appeals further clarified when a court of appeals should reverse a judgment and remand for modification to reflect a conviction of a lesser-included offense versus when a judgment should be reversed and an acquittal rendered:

> [A]fter a court of appeals has found the evidence insufficient to support an appellant's conviction for a greater-included offense, in deciding whether to reform the judgment to reflect a conviction for a lesser-included offense, that court must answer two questions: 1) in the course of convicting the appellant of the greater offense, must the [fact finder] have necessarily found every element necessary to convict the appellant of the lesser-included offense; and 2) conducting an evidentiary sufficiency analysis as though the appellant had been convicted of the lesser-included offense at trial, is there sufficient evidence to support a conviction for that offense? If the answer to either of these questions is no, the court of appeals is not authorized to reform the judgment. But if the answer to both are yes, the court is authorized – indeed required – to avoid the "unjust" result of an outright acquittal by reforming the judgment to reflect a conviction for the lesser-included offense.

Here, it is undisputed that the State was attempting to prosecute Appellant for the offense of possession of a Penalty Group 4 controlled substance, over 400 grams, and in the

course of finding Appellant guilty of that offense the jury must have necessarily found every element necessary to convict Appellant of the lesser-included offenses of (1) possession of a controlled substance, Penalty Group 4, 200 grams or more but less than 400 grams, (2) possession of a controlled substance, Penalty Group 4, 28 grams or more but less than 200 grams, and (3) possession of a controlled substance, Penalty Group 4, less than 28 grams. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.118(b), (c), and (d). Because the insufficiency of the evidence in this case goes to the nature of the substance possessed, as opposed to the amount possessed, applying the standards of evidentiary review to each of these lesser-included offenses, we find the evidence is still insufficient to support a conviction as to any of the lesser-included offenses. Accordingly, we reverse the judgment finding Appellant guilty of possession of a Penalty Group 4 controlled substance, over 400 grams, and we render a judgment of acquittal.

### TAMPERING WITH EVIDENCE

A person commits the offense of tampering with evidence if: (1) knowing that an investigation is pending or in progress; (2) he alters, destroys, or conceals any record, document, or thing; and (3) acts with the intent to impair its verity, legibility, or availability as evidence in the investigation or official proceeding. TEX. PENAL CODE ANN. § 37.09(a)(1); *State v. Zuniga*, 512 S.W.3d 902, 903 (Tex. Crim. App. 2017).

### ANALYSIS—ISSUE TWO

Through his second issue, Appellant contends the evidence was insufficient to prove he altered, concealed, or destroyed an unknown substance because the State relied solely on an incriminating statement he made during a jail phone call in which he said, "so you know I do what any other [person] would do and I eat everything." Appellant

15

complains the State failed to present any evidence corroborating this statement, thus rendering the evidence insufficient.

To support his argument, Appellant contends that under the *corpus delicti* rule, when the State relies on an extrajudicial confession of the accused to support a conviction, there must be independent corroborating evidence showing a crime has actually been committed. *Fisher v. State*, 851 S.W.2d 298, 302-03 (Tex. Crim. App. 1993). *See also Salazar v. State*, 86 S.W.3d 640, 645 (Tex. Crim. App. 2002). A defendant's extrajudicial confession alone is not sufficient. *Dansby v. State*, 530 S.W.3d 213, 224 (Tex. App.—Tyler 2012, pet. ref'd).

Appellant acknowledges that the evidence presented at trial shows the following: (1) police, with the help of a confidential informant, placed a call to Appellant to make arrangements for purchasing $50 of methamphetamine, (2) the parties agreed to meet at a specific location, at a specific time, (3) Appellant arrived in a vehicle at that location, at the agreed time, and (4) Appellant was a passenger in the vehicle. Appellant also concedes that his appearance may be some evidence that "he, *at some point*, intended to engage in a narcotics transaction with the informant." (Emphasis in Appellant's brief). But Appellant further contends the record contains no evidence he arrived with any methamphetamine or tampered with any evidence at the time of the stop. Appellant notes that a search of the vehicle revealed no methamphetamine, no baggies, no other containers, no residue, and no drug paraphernalia. There was no other contraband found inside or outside the vehicle and, at the time of his arrest, the police made no effort to determine if he swallowed any substances with the intent of impairing a pending investigation.

The State disagrees and contends it presented sufficient independent corroborating evidence. Specifically, the State argues the evidence established the police knew Appellant as a "known drug dealer" and that a confidential informant, in the presence of officers, called Appellant and made arrangements to purchase $50 of methamphetamine, at an agreed location, and at an agreed time. The evidence also showed that Appellant arrived at that location, at the agreed-upon time and was positively identified by the confidential informant as the person he called. The officer making initial contact with Appellant also testified that he noticed movement coming from the side of the vehicle on which Appellant was sitting. Other testimony established that Appellant made a recorded jail phone call where he admitted that he "ate everything" and that the other person in the vehicle with him was also going to buy some methamphetamine—explaining the reason for the one hundred dollars found on the floorboard of the vehicle. In that jail phone call, Appellant stated that the amount of methamphetamine he was going to sell amounted to about the size of a "sugar packet" and it would be "very easy" to swallow. Appellant also admitted that swallowing drugs was a "normal way for users and dealers alike to dispose of drugs . . . ."

From this list of testimonial evidence, we agree with the State that the evidence presented was sufficient to independently corroborate Appellant's statement and we find the evidence was sufficient for a reasonable juror to conclude Appellant, knowing that an investigation was in progress, altered, destroyed, or concealed an unknown substance, with the intent to impair its availability as evidence in the investigation. Accordingly, we overrule Appellant's second issue.

**CONCLUSION**

We reverse the judgment finding Appellant guilty of possession of a Penalty Group 4 controlled substance, over 400 grams, and we render a judgment of acquittal. Furthermore, we affirm the judgment finding Appellant guilty of the offense of tampering with evidence.

Patrick A. Pirtle
Justice

Publish.